ELECTA E. PALMER, APPELLANT, VS. FRANK H. PALMER, APPELLEE.

DIVORCE—SEPARATION OF PARTIES PENDING SUIT FOR IS NOT DESERTION—CONTEMPT OF COURT'S ORDERS.

1. In a suit in equity where contempt proceedings are instituted for violation of the court's orders in the cause, it is error to adjudge the accused party to be guilty without having had notice of the charge of contempt, and without his being afforded an opportunity to purge himself therefrom. In such a case, where no notice of the charge of contempt has been given to the accused party, it is error for the court, as a punishment for the

25

contempt, to refuse to hear the party upon the merits of the cause. or to treat him as one in default by ordering testimony to be taken *ex parte* on the merits and by the rendition of an *ex parte* final decree, in disregard of his pleadings on file.

2. The voluntary separation of a wife from her husband, while proceedings for divorce are pending between them, where such proceedings are not a sham and pretense, does not constitute such wilful desertion as would authorize a divorce therefor.

Appeal from the Circuit Court for Hillsborough county.

The facts in the case are stated in the opinion of the court.

*Sparkman & Sparkman*, for Appellant.

*Macfarlane & Pettingill*, for Appellee.

### ARGUMENT.

It is plain from the brief of counsel for the appellant, though they do not say it in so many words, that they have abandoned all but the *third* and *sixth* grounds of their appeal. At any rate, under the recent decisions of this court, all others should be treated as abandoned. Hays vs. Todd, 34 Fla. 233; Thomas vs. State, 18 So. Rep. 331; Charles vs. State, 18 So. Rep. 369.

The said third and sixth grounds both relate to the pendency of a demurrer to the bill of complaint, which remained undisposed of at the time of final decree. This demurrer was filed at the same time as the answer of appellant (defendant below), and by the filing of such answer a ruling on the demurrer was waived and the demurrer abandoned. Daniel's Ch. Pl. & Pr. (6th Am. Ed.) No. 589, note 8 and cases. Jarvis vs. Palmer, 11 Paige 650; Wade vs. Pulsifer, 54 Vt. 45; So. Life Ins. Co. vs. Lanier, 5 Fla. 148.

The two authorities cited in brief for appellant upon this point are both cases at law wherein the rule has been fixed in this State by an old statute (Rev. Stat. sec. 1051), and neither case is in point as applied to equity procedure. This court has never questioned the decision in So. Life Ins. Co. vs. Lanier, which supports our contention.

## II.

But in case the court should think fit to investigate the whole record, they will find that the court below was right and fully justified in refusing further to hear the appellant (defendant below) until she had taken some action to purge away the contempt of which she had *prima facie* been guilty. The rule against her was issued during the month of June, 1890, and duly filed with the record of the cause in the clerk's office; it could not be served personally upon her because she had departed for parts unknown, still carrying with her the child which was the cause of her violation of the court's order, but her solicitors remained to represent her and notice to them must be considered the same as notice to the defendant. We allowed *three* rule days to pass (July, August and September) before we took any action, waiting for some effort on the part of defendant's solicitors to purge their client of contempt, but none was made. We submit that parties and their solicitors are charged with notice of all papers duly on file in a cause on the rule day of the court, in other words that such filing is constructive notice to them; and that after the rule day in July, 1890, it was their duty to have filed an answer to the rule to show cause, if they had any defense or excuse to offer.

Houston vs. City and County of San Francisco, 47 Fed. Rep. at 340, 341. Yet we waited until the 10th

day of September, 1890, before taking any further action, at which time we asked the court for an order in the terms shown by the order of that date contained in the record. This the court had a perfect right to do. Walker vs. Walker, 82 N. Y. 260; Megin vs. Filor et al., 4 Fla. 206.

Then we waited nearly a month more before proceeding further. On the 3d day of October, 1890, we asked for and obtained an order reciting the defendant to be in contempt and appointing a master to take the evidence on behalf of the complainant. This was, we submit, a sufficient adjudication of contempt under the rule laid down by this court in Rushing et ux. vs. Thompson's Ex'trs. 20 Fla. 583, 591. See also Wharton vs. Stoutenburg, 39 N. J. Eq. 299.

The appellant has never, even until now, made any attempt to purge herself of contempt and should not, we believe, be heard in this appellate court.

In any aspect of the case, the decree should be affirmed.

TAYLOR, J.:

On the 31st day of May, A. D. 1890, Frank H. Palmer, the appellee, filed his bill for divorce in the Circuit Court of Hillsborough county against Electa E. Palmer, the appellant, in which he alleges that on the 3d day of October, A. D. 1885, she willfully deserted and absented herself from him without any reasonable cause, and that such desertion has been wilful, obstinate and has continued until the present time, the date of the filing of this bill. He further alleges in his bill that the said Electa in the month of October, A. D. 1885, filed her bill for divorce absolute against him in the same court, which resulted in a

final decree of said Circuit Court, on the 30th day of January, A. D. 1888, in favor of the said Electa, whereby she was absolutely divorced from him, and adjudging to her the care, custody and control of their three children, and permanent alimony, besides her counsel fees. That he appealed from said final decree to the Supreme Court of Florida, and that said decree was reversed and the said Electa's bill dismissed upon said appeal by the Supreme Court on the 25th day of May, A. D. 1890 (26 Fla. 215, 7 South. Rep. 864). That as the issue of their marriage they have three children, *viz:* Charles Francis, eight years and nine months old, Clarence Myron, six years and a half old, and Ruby, four years and three months of age. That under the said reversed decree of said Circuit Court she has had the care, custody and control of said children ever since. That she has neglected the minds and bodies of said children, keeping them closely confined so that he could not have access to them, and that they have been deprived of necessary food and clothing, and that their education has been utterly neglected, and that she has so little affection for them that she would give them away to strangers but for the fact that he could then recover them. That since her desertion of him she has conducted herself in an unseemly and unladylike manner, accepting the attention of lovers, and engaging herself to be married to another man. The bill prays for divorce *a vinculo matrimonii*, for the care, custody and control of the children, and for an injunction restraining the said Electa from interfering in any manner with his custody of said children.

The defendant demurred to said bill upon the ground, in substance, that upon its face it showed that during the whole period of time occupied by the desertion

therein alleged as the ground of divorce there was pending a suit for divorce between the defendant and the complainant, and that, in law, the complainant could not avail himself of her separation from him during that period as such a desertion as would entitle him to a divorce. The defendant also answered the bill, admitting that she lived separate and apart from the complainant, but denying that it was desertion, and justifies her separation by alleging that her litigation against him for divorce was pending during the whole time from October 3d, 1885, to May 25th, 1890. She denies in her answer all the material allegations of the bill. She also filed a cross-bill charging him with adultery, and prays therein for absolute divorce, the custody of the children and for alimony and counsel fees. She answered her cross-bill denying all the allegations thereof. On May 3d, 1890, the court below made an order in said cause, reciting the fact that neither of the parties could be entrusted with the custody of said children pending the suit, and referring the question to a master to take proof and make report to the court as to who would be a suitable person to whose custody they could be committed pending further proceedings in the cause; and that until the coming in of the master's report the children should remain as they then were, and that both the complainant and the defendant should be strictly enjoined and restrained from removing or interfering with said children in any manner whatever, except to visit them at reasonable hours in daylight. Upon the coming in of the master's report, and upon numerous affidavits filed with the judge for and against the proposition to commit said children to the custody of a third party, the court below, on June 7th, 1890, made an order committing said children to the care and custody of Mrs. Ida J. Kennedy,

and directing the sheriff to deliver them over to her; permitting both parties to visit said children at all times during the day time, but enjoining both of them from interfering in any manner with the said Mrs Kennedy in the care, custody, management and control of them, or from removing or attempting to remove them from her premises until the further order of the court. Upon a petition filed by the complainant, alleging that the defendant Electa E. Palmer had violated the injunction granted on the 3rd day of June, 1890, restraining her from removing or interfering with said children, by taking the youngest child, Ruby, away and secreting it so that neither she nor the said child could be found, and that she was, therefore, in contempt of court, and praying for a rule upon her to show cause why she should not be punished for such contempt, the Judge below made an order on June 10th, 1890, directing and requiring that the said Electa should be and appear before him on the 14th day of June, A. D. 1890, to show cause, if any she could, why she should not stand committed for said alleged contempt. Upon a certified copy of this order the sheriff made the follow ing return: "Received this writ 14th day of June, A. D. 1890, at 10 o'clock A. M., too late for service, this 16th day of June, A. D. 1890." The complainant's counsel, on July 7th, 1890, filed a præcipe with the clerk to dismiss the defendant's cross-bill because of her failure to file a replication to his answer thereto. On August 4th, 1890, the defendant, through her counsel, filed a præcipe with the clerk to dismiss the complainant's original bill because of his failure to set down for argument the defendant's demurrer thereto. The complainant then gave notice that on the 10th of September, 1890, he would call up for argument before the Judge at chambers the defendant's motion to dis-

miss the complainant's bill, and the complainant's motion to dismiss the defendant's cross-bill.   On the day appointed, September 10th, 1890, the Judge made the following order:   "This cause being submitted to the court on a motion to dismiss, it is considered by the court that the motion is imperfectly entered, because there is, and has been for some time, pending a rule against the defendant to show cause why she should not be committed for contempt, to which defendant nor her counsel have responded or made return.   Therefore the court declines to hear defendant or counsel in any further steps until said matter of contempt is disposed of."   Afterwards, on the 3rd of October, 1890, the court made an order referring the cause to a master to take testimony on behalf of the complainant, wherein the granting of the rule to show cause for contempt against the defendant is recited, and that the defendant, in reference to said rule, was considered to stand in contempt of the court.   The master to whom the cause was referred reported considerable testimony to the court, taken *ex parte* the complainant upon the main issue presented by the bill, which report was filed October 11th, 1890, with the Judge.   On the same day that the report of the master was filed with the Judge, on the 11th of October, 1890, a final decree was rendered without any notice to the defendant or her counsel of the hearing, by which the parties were absolutely divorced on the ground of the defendant wife's desertion, and the custody of the children awarded to the complainant husband.   From this decree the defendant below appeals.

At the June term, 1891, of this court the complainant, appellee in this case, moved here to dismiss this appeal upon the ground that the defendant (appellant) had been adjudged to be in contempt of the court be-

low for violating its order of injunction in reference to removal of the children; which contempt, it is claimed, continued, and had not been purged. In refusing this motion to dismiss we held, in effect, that the record here did not show that there had ever been an adjudication of the contempt proceedings against the defendant, and that, in the absence of any proper service of the rule to show cause why she should not be held for contempt, there could not be any proper adjudication against her in that proceeding; for the simple reason that it would be a condemnation without giving her an opportunity to be heard on the charge of contempt preferred against her. Palmer vs. Palmer, 28 Fla. 295, 9 South. Rep. 657. The record shows that the rule or notice to the defendant to show cause why she should not be held in contempt for violation of the court's order of injunction has never been served either upon her, or in any of the modes permitted by the practice in such cases, yet the court below, treating her as though she was an adjudged violator of its orders, visited upon her, as part of the penalty of such contempt, the deprivation of the right to be further heard in the cause, by herself or counsel, and ordered the taking of testimony *ex parte* the complainant upon the main issue involved; and, upon this *ex parte* testimony, without any notice to her or her counsel, on the same day that the master reported the testimony taken, in total disregard of rule 84 for the government of the Circuit Court in equity suits, requiring masters in chancery to file their reports in the clerk's office and giving the parties one month thereafter to except thereto, the court made its final decree, without any disposition of the defendant's demurrer to the complainant's bill, and without any opportunity ever having been afforded to her to be heard upon the merits of her cross-bill or an-

swer. All this was error. It is questionable whether it would ever be proper, in a divorce suit, in which the public are to some extent interested as a community, to visit upon either of the parties, as part of the punishment of a contempt of court committed in the progress of the proceeding, a deprivation of the right to make a full *expose* of all matters bearing upon the controversy; but, in a case like this, where there has been no proper adjudication of the charge of contempt, and no notice of the charge served upon the party accused, we feel assured that the infliction of such punishment was altogether improper. But further than this we find that the proofs offered on behalf of the complainant as establishing the defendant's desertion, upon which the decree appealed from was predicated, all of it, confines the time of the alleged desertion to the time when the former divorce proceedings were pending between the parties. The bill alleges the desertion to have commenced on October 3rd, 1888, and it shows that the wife's divorce suit against the husband was then instituted, and that litigation was pending until the 25th of May, 1890, only six days before the filing of the complainant's bill herein. There is nothing in the record even tending to show that that suit by the wife was simply a pretence to cover intended desertion; on the contrary, the history disclosed of that case indicates that it was a bitterly contested reality. Under these circumstances, even with his *ex parte* proofs, the complainant did not show himself to be entitled to a divorce from the defendant upon the ground of desertion, upon which, solely, he claimed it. The voluntary separation by a wife from her husband, while proceedings for a divorce are pending between them, where such proceedings are not a sham and pretense, does not constitute such wilful desertion as would au-

thorize a divorce therefor. The settled usage of the courts, as a regard for public decency, is to require the parties, under such circumstances, to live separately. Marsh vs. Marsh, 14 N. J. Eq. (1 McCarter), 315, S. C. 82 Am. Dec. 251; Doyle vs. Doyle, 26 Mo. 545; Edwards vs. Green, 9 La. Ann. 317; Salorgne vs. Salorgne, 6 Mo. App. 602; Wagner vs. Wagner, 39 Minn. 394; 1 Bishop on Marriage and Divorce, §§ 1756, 1757.

The decree appealed from is reversed with directions to dismiss the complainant's bill.