ROBERTS, Justice.
Mrs. Betts, the appellant, filed suit for divorce in the Circuit Court in and for Dade County, Florida, against Mr. Betts, the ap-pellee, alleging the statutory grounds of extreme cruelty and desertion. Mr. Betts in his answer denied that he had been guilty of the charges made against him and alleged, additionally, that the charge of extreme •cruelty had been adjudicated adversely to Mrs. Betts by the Superior Court of Hancock County, Maine, and that such question was res adjudicata. The cause came on for hearing before the Chancellor on the issues thus made. The Chancellor found that Mrs. Betts had not sustained the allegations of lier complaint as to either ground and, also, that the decree Of the Maine court was res adjudicata on the issue of extreme cruelty. He dismissed her complaint with prejudice, and Mrs. Betts has appealed from the decree of dismissal.
It appears that the parties were married in January 1946 in Stonington, County of Hancock, State of Maine, and lived and cohabited there until September of 1948. At that time, together with Mrs. Betts’ mother and the two-year-old child of the parties, they went to Salt Lake City, Utah, apparently to spend the winter there and in California on account of the health of Mrs. Betts’ mother. Mr. Betts obtained employment in Salt Lake City but was discharged in December of 1948. On December 26, 1948, he left Salt Lake City and returned to Stonington, Maine, ostensibly to obtain employment there. From that time until the present date the parties have not lived together. They have also been engaged in almost continuous litigation since then, the course of which will he recounted as briefly as possible.
The litigation involves two suits filed by Mr. Betts in the State of Maine and two suits filed by Mrs. Betts, one in Utah and one in Maine — and, of course, the instant suit filed by Mrs. Betts in this state. Mr. Betts started the litigation by filing a petition for custody of the child of the parties on March 8, 1949, in the Probate Court of Hancock County, Maine. While this suit was pending, and on March 30, 1949, Mrs. Betts filed suit for divorce in Utah on the ground of extreme cruelty. Mr. Betts, by his counsel, appeared specially in such cause to challenge the jurisdiction of the Utah court on the ground that Mrs. Betts was not a bona fide resident of the State of Utah, but such motion was denied; and the cause proceeded to the entry on June 22, 1949, of an interlocutory decree of divorce in favor of Mrs. Betts without any further appearance therein by Mr. Betts. In the meantime, on June 7, 1949, Mr. Betts’ petition for custody of'the child had been denied by the Maine Probate Court.
On June 15 or 16, 1949, Mrs. Betts returned to Stonington, Maine. Mr. Betts immediately, on Juné 16, 1949, instituted di *304 vorce proceedings against Mrs. Betts in the Superior Court of Hancock County, Maine. Mrs. Betts testified that she was served with process in that suit the day after she returned to Maine; but so far as the record shows, no further proceedings appear to have been taken in such suit, and it was dismissed without prejudice (apparently upon the motion of Mr. Betts) on September 22, 1950.
No attack was made by Mr. Betts on the Utah decree until December 14, 1949, at which time he filed in the cause a motion to set aside the decree, supported by his affidavit, on the ground that Mrs. Betts was not a bona fide resident of the State of Utah. Hearing on the motion was had on July 21, 1950, both parties being represented by counsel, and an order nullifying and setting aside the Utah decree was entered on September 8, 1950.
As above noted, Mr. Betts’ Maine divorce suit was dismissed without prejudice on September 22, 1950. On September 28, 1950, Mrs. Betts instituted divorce proceedings in the Superior Court of Hancock County, Maine. This proceeding was apparently adjudicated adversely to: Mrs. Betts, as shown by a copy of a docket entry introduced in evidence in the instant suit, reading as follows: “August 20-1951: Hearing had: Divorce denied.” Mrs. Betts then moved to Florida and filed her suit for divorce here on December 31, 1951.
At the outset, it should be noted that there is no basis here for the application of the'doctrine of res adjudicata, and the Chancellor must be held in error for so decreeing. In the first place, it does not appear that a copy of the final judgment of the Maine court was filed in this cause, and we do not think a mere docket entry is sufficient as a foundation for the invocation of the doctrine of res adjudicata. In the second place, Mr. Betts failed to carry his burden of proving that the issue of “extreme cruelty” had been formerly adjudicated in the Maine suit. In the Maine suit, Mrs. Betts alleged the statutory ground of “cruel and abusive treatment,” and the Maine statute, Section 55, Chap. 153, p. 2061, Revised Statutes of Maine, 1944, also lists “extreme cruelty” as a ground for divorce. Mrs. Betts thus relied on a different statutory ground in her Florida suit. However, it is the rule in this state that “The test of the identity of the causes of action, for the purpose of determining the question of res adju-dicata, is ’ the identity of the facts essential to the maintenance of the actions.” Gordon v. Gordon, Fla., 59 So.2d 40, 44. Only a portion of the testimony adduced in the Maine cause was offered by counsel for Mr. Betts, and the Chancellor excluded most of this .testimony. The testimony admitted by the Chancellor related solely to the state of Mrs. Betts' feelings toward Mr. Betts when he departed from Utah in December of 1948. This was certainly insufficient as a basis for a finding that the “testimony produced by the plaintiff in the second suit [was] essentially the same as that which was produced in the former action”, Gordon v. Gordon, supra, and that is what Mr. Betts was required to prove ' in order to sustain his plea of res adjudicata. It was, then, error to hold that the question of extreme cruelty was res adjudicata.
We need not decide whether the Chancellor erred, also, in holding that Mrs. Betts failed to prove her charge of extreme cruelty, since we think the proof was ample to show that Mr. Betts had been guilty of “Willful, obstinate and continued desertion” for one year, Section 65.04(7), Florida Statutes, F.S.A.
In considering this question, we are at once confronted with the necessity of determining whether such desertion was “willful and obstinate” for the statutory period, in the light of the rule that, ordinarily, the running of the statute is stopped while divorce proceedings are pending between the parties. Palmer v. Palmer, 36 Fla. 385, 18 So. 720, 723. It appears that at no time since December 26, 1948, has there been a continuous period of one year which has been uninterrupted by divorce litigation between the parties. But this is unimportant if, in fact, -the periods uninterrupted by bona fide litigation, when *305 added together, are as much as one year. Woodward v. Woodward, 122 Fla. 300, 165 So. 46.
In computing the time during which litigation was pending, we do not need to consider the pendency of Mir. Betts’ suit for custody of the child, since this is clearly not the type of litigation contemplated by the rule; nor do we need to consider the period during which his Maine divorce suit was pending. Ordinarily, separation of the parties during divorce litigation is presumed to be justifiable and excusable, since as a matter of public policy the parties should not live together during divorce litigation. Thus, it is clear that the statutory period should not run against a spouse who honestly prosecutes a supposedly sound suit for divorce; but it is just as clear that a deserting spouse cannot “transform a causeless abandonment of the marital domicile into an innocent absence” by filing a groundless suit in bad faith, Kusel v. Kusel, 147 Cal. 52, 81 P. 297, 298. The rule is a presumption only, and if the prior suit is not bona fide, it will not constitute a bar. Palmer v. Palmer, supra; Cooper v. Cooper, 92 Mont. 57, 10 P.2d 939, 941; Mangini v. Mangini, 9 N.J. Super. 418, 75 A.2d 152. As stated in Easter v. Easter, 75 N.H. 270, 73 A. 30, 31, “The pendency of a libel for divorce is an evidentiary fact, bearing upon the question whether the absence complained of is such an abandonment as the statute makes a cause for divorce, but it is not necessarily decisive of the question.” In the instant suit, Mr. Betts admitted that his Maine divorce suit was “for defensive reasons” and that he “had no intention of getting it.” It was dismissed without prejudice (apparently upon his motion) over a year after its institution by him and without any proceedings, other than the service of process upon Mrs. Betts, being taken therein. Under such circumstances, his suit is no excuse for his living separate and apart from Mrs. Betts during its pendency, and has no bearing on the question of whether his desertion during' that period was “willful and obstinate” under our statute.
As to the divorce litigation instituted by Mrs. Betts, there was ample time during which no litigation was pending to cover the one-year period required by our statute. At the time of the institution of the instant suit by Mrs. Betts on December 31, 1951, the parties had not lived together for a full three years. Of that period, some three months were consumed in the Utah divorce proceedings (which we assume was “bona fide” within the ¡meaning of the rule, but without deciding such question, since it is unnecessary), and some eleven months were consumed in the Maine divorce proceedings filed by her. Thus, there were almost two years during which no bona fide litigation was pending between the parties, which is well over the one-year period required by our statute.
We have considered the period intervening between the date of the entry of the Utah. interlocutory decree, to wit, June 22, 1949, and the date of its annulment upon the motion of Mr. Betts, to wit, September 8, 1950, and have concluded that the existence of such decree did not in the circumstances here present justify -or excuse his abandonment during that period. It appears to be generally held that where the parties are living separate and apart by virtue of a decree a mensa et thoro or a decree of separate maintenance, the effect of such a decree is to stop the running of the statute. As stated in Bliss v. Bliss, 208 Minn. 84, 293 N.W. 94, 95, “Where a wife is living apart from her husband under an order or judgment of the court, the separation is neither wrongful nor unlawful for the reason that such order or judgment determines that there is legal cause for the separation and thus gives it legal sanction. Such a separation is for legal cause and with legal excuse.” See also on this question Kimball v. Kimball, 129 N.J.Eq. 169, 18 A.2d 25; Malouf v. Malouf, 54 Wyo. 233, 90 P.2d 277; Slavinsky v. Slavinsky, 287 Mass. 28, 190 N.E. 826; annotation in 25 A.L.R. 1047, supplemented in 61 .A.L.R. 1268.
No cases have been found on this question, where the decree was one a vinculo *306 matrimonii which was subsequently annulled by the court rendering it; but we do not think the rule as to separation under the other decrees mentioned above is applicable under the circumstances here present. As above noted, Mr. Betts attacked the jurisdiction of the Utah court at the inception of the proceedings, although unsuccessfully. It must be assumed that the void character of the decree was known to him upon its entry, since the facts set forth in his affidavit filed in support of his motion to set aside the decree were in existence at the time of its entry. Instead of attacking the decree, he institutes on his own part a divorce proceeding (admittedly in bad faith) and waits until one week before the expiration of the- six-month period at the end of which the Utah divorce decree became absolute, Title 40-3-6, Utah Code, 1943, before moving to set it aside. It is a reasonable inference that his delay in moving to set aside the void decree was likewise “for defensive reasons”; but even if this inference is unwarranted, it is our opinion that the existence of a null and void decree, known by the deserting spouse to be so, cannot “transform a causeless abandonment of the marital domicile into an innocent absence,” Kusel v. Kusel, supra. His desertion was no less “willful and obstinate” because of the existence of such decree, and it did not stop the running of the statute.
The other aspect of the desertion question is whether the evidence was sufficient to support the charge. A careful review of all the evidence compels us to disagree with the finding of the learned Chancellor that it was insufficient. Mr. Betts testified in the instant proceeding that he was willing to provide for Mrs. Betts and his child and make a home for them, and it appears that he also so testified in Mrs. Betts’ Maine divorce proceeding. But we think this is a case where “actions speak louder than words.” He admits that at no other time has he ever expressed to her any desire to resume cohabitation with her; that he has never provided any living quarters for her and her child; that he has not contributed one cent to their support since December 28, 1948 (except, possibly, for $15 sent during the illness of the child shortly after his return to Maine and while Mrs. Betts and the child were still in Utah). His conduct since December of 1948 has been that of total neglect of his family; or as said in Kupka v. Kupka, 132 Iowa 191, 109 N.W. 610, 611, of total “‘abnegation of all the duties of the marital relation’ ”. While nonsupport is not a ground for divorce in this state, it is certainly material on the question of whether a husband has, in fact, deserted his wife; and there can be no doubt of Mr. Betts’ “total abnegation” of his marital duties here.
Mr. Betts attempted to excuse his failure to contribute to the support of his family by testifying that “Well, in March, 1949, she started legal action against me, and continuously since then she has had me either defending myself in Utah, Maine or Florida, which has taken every cent of money I could earn or borrow.” From what has been said before, it is apparent that this statement is not supported by the record. He has been continuously employed since November of 1949, making $54 a week, plus overtime, and we have no doubt that he could have made some effort to establish a home and provide for them, had he desired to do so.
Nor is nonsupport the only manner in-which his intent to desert appears. Mrs. Betts’ sister testified that, upon Mr. Betts’-return to Maine in December 1948, he stated that he and Mrs. Betts were separated and were going to get a divorce; and that, shortly after an accident suffered by Mrs. Betts in January 1949, he told the witness that “he wasn’t going to bother with them, the hell with them, he was all through.” This witness also testified that in March or April, 1949, Mr. Betts moved all the furniture out of the apartment which the parties had occupied prior to their trip to Utah and, upon her objection, told her that the marriage “was all through anyway, and he was going to take what he wanted before she came home.” Mr. Betts denied making such statements to the witness but did not deny removing the furniture.
*307 He could not of course, deny that he filed a petition for custody of the child-on March 8, 1949, in which he stated that he and Mrs. Betts were “living apart from each other.” He represented in this testimony that this suit was for the purpose of compelling Mrs. Betts to return with the child to the State of Maine; but there is no evidence, other than his statement, that Mrs. Betts’ intention at that time was anything other than to return to Maine, as originally planned.
We have not overlooked Mrs. Betts’ testimony that she is not now willing to live with Mr. Betts, and that she was not willing at the time the suit was tried in Maine to resume cohabitation with him. But we do not think a wife is required to hold out open arms, ad infinitum, to a spouse whose entire course of conduct has been one of cold neglect and indifference for many years past. Moreover, the statutory period of desertion, under our statute, had run prior to the filing of the Maine suit by her; her cause of action was complete. It was in the Maine suit that Mr. Betts stated in open court his desire to resume cohabitation with his wife — and, admittedly, this was the first time he had communicated such desire to Mrs. Betts since their separation in December 1948. Certainly an offer of reconciliation at such a time and place is not under optimum conditions; and, again, it is a reasonable inference that such offer was “for defensive reasons” only.
There can be do doubt that Mrs. Betts, at the time of Mr. Betts’ return to Maine in December of 1948, looked forward and expected to return to Maine and resume their cohabitation in the spring of 1949. Her staying on in Utah, at the time of his departure for Maine, appears to have been necessitated by the fact that her mother was unable to drive a car. Her letters to him, filed in evidence by him in the instant suit, are those of a loving and affectionate wife. We can only surmise what injuries to her pride impelled her to file the Utah suit for divorce (which was filed after he had instituted the proceedings in Maine for the custody of the child), and we have no way of knowing whether she would have refused to resume cohabitation with him upon her return to Maine in June of 1949, since Mr. Betts made no move toward a reconciliation. Nor do we think that Mrs. Betts was required to take the first step in this direction. “From time immemorial the male has been recognized as the natural aggressor in the matter of courting the woman whom he desires to become his wife. There seems to be no logical reason why he should not continue such role thereafter, particularly subsequent to discord, misunderstandings and separation. Indeed, it is well established that the husband should take the initial step towards reconciliation and some courts have gone so far as to hold this to be true even if a wife deserts him without cause.” Gordon v. Gordon, supra [59 So.2d 47], See also Hudson v. Hudson, 59 Fla. 529, 51 So. 857, 29 L.R.A..N.S., 614.
We think that, as in McGee v. McGee, 149 Fla. 31, 5 So.2d 49, “This couple can never sail the matrimonial sea, except in storm, tempest, fog and misery. They can only wound and never comfort one another.” The evidence was ample to sustain Mrs. Betts’ charge of desertion against Mr. Betts, and the Chancellor must be held in error for denying her a divorce on this ground.
For the reasons stated, the decree appealed from is reversed and the cause remanded with directions to enter a decree in favor of Mrs. Betts with such provisions as to the custody and support of the minor cljild of the parties as shall to the Chancellor seem fitting and proper.
Reversed and remanded with directions.
HOBSON, C. J., and THOMAS and DREW, JJ., concur.