## STATE, ex rel. VINSON v. CARSON, Sheriff.
### No. 65-560-L.

Circuit Court, Duval County.
March 10, 1965.

Porter W. Ingram, Jacksonville, for petitioner.

William A. Hallowes, III, State Attorney, for respondent.

TYRIE A. BOYER, Circuit Judge.

This cause came on to be heard on petitioner's petition for writ of habeas corpus, writ having heretofore been issued and the respondent having produced the petitioner before the court at the appointed time. At the hearing the attorney for the petitioner and the assistant state attorney representing the respondent stipulated and agreed to treat the petition as a traverse of the return of the respondent sheriff, which is endorsed upon the reverse side of the writ of habeas corpus, pursuant to which the hearing was held.

The court examined the petition, writ and return and heard testimony from the petitioner and an officer of the juvenile court in and for Duval County.

It appears that the essential facts are not substantially in dispute. The petitioner is the mother of Jesse Henry Williams, age 16. Jesse, prior to the proceedings giving rise to this cause, was frequently involved in situations as a result of which he became well acquainted with the juvenile judge, and authorities of Duval County, and they with him. At some time prior to January 11, 1965, the petitioner, mother of Jesse Henry Williams, was verbally ordered by the judge of the juvenile court of Duval County to notify the juvenile authorities, or other law enforcement officers, of the whereabouts of her son in the event such information should become known to her. Thereafter Jesse again became involved in a situation as a result of which he was taken into custody and the customary notice was served upon his parent, the petitioner herein, of a hearing that would be held in the juvenile court of Duval County on February 26, 1965. Pursuant to that notice the petitioner appeared. During the hearing it developed that on occasions subsequent to the verbal order to notify the juvenile or law enforcement officers of the whereabouts of Jesse, and prior to the incident which gave rise to the notice of the hearing on February 26, 1965, the petitioner had known of the whereabouts of her said son, Jesse, but had failed

to notify either the juvenile authorities or law enforcement officers. At the conclusion of the hearing, the juvenile judge bound Jesse over to the criminal court of record of Duval County for further proceedings on his alleged offense which gave rise to the hearing, and entered an order finding the petitioner to be "in wilful and wanton contempt of this court by her failure to notify any law enforcement authority of Jesse's whereabouts, knowing a custody order was out for his apprehension, the whereabouts of Jesse being known to her", and committing her "for her act of wilful and wanton contempt of this court" to the Duval county jail for a period of six months.

This proceeding was commenced, alleging that the petitioner's imprisonment was unlawful and praying that petitioner be restored to her liberty.

The only point urged at the hearing (all other points, by agreement of counsel, having been specifically reserved until the court ruled upon such point) was that the adjudication of contempt, and committment therefor, was procedurally defective.

Contempts are classified either as direct, or as indirect or constructive. Direct contempt consists of words spoken or acts committed in the presence of the court or of a judge acting as such, or a resistance of, or an interference with, the lawful authority of the court or judge acting judicially, so as to interrupt or hinder judicial proceedings. An indirect or constructive contempt is an act done, not in the presence of a court or a judge acting judicially, but at a distance under circumstances that reasonably tend to degrade the court or a judge as a judicial officer, or to obstruct, interrupt, prevent, or embarrass the administration of justice by a court or judge. (See 6 Fla. Jur., Contempt, §3, and cases there cited)

In cases of direct contempt the court acts on view and without trial, and may inflict punishment at once. In proceedings for indirect or constructive contempt due process of law requires that the accused be given notice of the charge and a reasonable opportunity to meet it by way of defense or explanation. This includes the assistance of counsel, if requested, and the right to call witnesses to give testimony relevant to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty imposed. (See 6 Fla. Jur., Contempt, §§ 47, 49, 50, 51, 52, 53 and 54, and cases there cited.)

It is clear in the case at bar that the petitioner, prior to her committment for contempt, was not given notice of any proceeding for contempt nor was she afforded an opportunity to call witnesses or offer testimony in extenuation of the offense and in mitigation of the penalty imposed. Therefore the essential

issue to be resolved, assuming the petitioner's acts or omissions to have been contemptuous, is whether such contempt was direct or indirect. Clearly if it was indirect the correct procedure was not followed and the prayer of the petition for writ of habeas corpus must be granted. If the contempt was direct then the petitioner's committment was procedurally proper.

If the petitioner had, at the time she was ordered to notify the court of the whereabouts of her minor son (assuming the court to have authority to so order) thereupon, or thereafter in the presence of the court, refused so to do, the contempt would be direct and subject to punishment without further notice. However, the evidence in the case at bar clearly reveals that such was not the case. It appears from the evidence before this court that if the petitioner did in fact know of the whereabouts of her son, such knowledge was gained outside of the presence of the court and her contempt, if any, was the failure, while not in the presence of the court, to notify the court or other duly constituted officers his whereabouts. Accordingly it is clear, and this court finds, that the petitioner's act or omission was indirect or constructive.

By virtue of Florida Statute 39.13, the juvenile courts have the same power to punish for contempt as do circuit courts. In Palmer v. Palmer, 28 Fla. 295, 9 So. 657, and in Palmer v. Palmer, 36 Fla. 385, 18 So. 720, it was held that in an equity proceeding wherein a party failed to comply with the court's order to deliver up custody of children it was error to adjudge such party to be guilty of contempt without prior notice of a hearing on such charge, and without his being afforded an opportunity to purge himself therefrom. In the case at bar, though the order of committment directed the sheriff to take the petitioner into custody and detain her for a definite period or "until she shall have purged herself of the act of contempt" the order does not provide a manner by which she may so purge herself and the uncontradicted evidence reveals that at that time her son was in custody — therefore it was impossible for her to purge herself by divulging to the authorities his then whereabouts, such being better known to the authorities than to petitioner.

Louisiana makes the same distinction, by code provision, between direct and indirect contempt as is recognized in Florida by virtue of the common law. In In Re Shumaker, La., 102 So. 2d 220, the Supreme Court of Louisiana held a judgment of contempt null and void by which the father of a child was held in contempt by a judge of the juvenile court for his failure to produce his child in court as the judge had ordered — holding that the misconduct had occurred out of the presence of the court and therefore was indirect, thus entitling the petitioner to a hearing upon a rule to show cause after notice.

Upon consideration of the foregoing the prayer of the petitioner's petition for writ of habeas corpus will be granted and the petitioner will be discharged.

Nothing in this memorandum opinion or in the order which will be entered pursuant hereto is to be construed as a holding by this court that the juvenile judge of Duval County either does or does not have the authority to require a parent to inform the authorities of the whereabouts of such parent's minor child, nor as to whether the act or omission on the part of the petitioner in the case at bar was in fact contemptuous. This court's sole holding is that the evidence reveals that the acts or omissions which gave rise to the petitioner's committment occurred outside of the presence of the court and therefore, if contemptuous, constituted indirect contempt, thus entitling the petitioner to an opportunity, by way of rule to show cause or other appropriate notice, to a full and complete hearing on the charge of contempt.