55 So.2d 800 (1952)
FINCHER
v.
FINCHER.
Supreme Court of Florida, en Banc.
January 15, 1952.
*801 Evans, Mershon, Sawyer, Johnston & Simmons, Herbert S. Sawyer and O.B. Simmons, Jr., all of Miami, for petitioner.
Ben Cohen and Albert M. Lehrman, Miami Beach, for respondent.
HOBSON, Justice.
This case is before us upon petition for writ of certiorari to review an interlocutory order entered in the Circuit Court of the Eleventh Judicial Circuit of Florida. The order to which exception is taken was one wherein the Chancellor denied the motion of the defendant (petitioner here) to set aside his previous order dated July 17, 1951, which order was entered upon the bill of complaint of the plaintiff (respondent here) and her uncorroborated testimony. The order of July 17, 1951, required the petitioner to pay certain sums for alimony and attorneys' fees pendente lite.
In her bill of complaint respondent alleged that she and the petitioner were man and wife as result of a common-law marriage which allegedly took place on November 19, 1946, at the Arlington Hotel, Hot Springs, Arkansas. It is not clear from the allegations of the complaint when or whether the respondent and the petitioner entered into a contract per verba de praesenti to be man and wife. The allegations of the complaint at most show only that the parties to this suit lived together as husband and wife and that each represented the other as his or her spouse.
We have repeatedly held that a common-law marriage may be entered into in this State and exist validly thereafter *802 but we have also consistently declared that a contract per verba de praesenti to be and become man and wife between a man and woman each of whom occupies the status of an unmarried person is an essential prerequisite to the existence of a legally binding common-law marriage. Marsicano v. Marsicano, 79 Fla. 278, 84 So. 156; Chaves v. Chaves, 79 Fla. 602, 84 So. 672; Orr v. State, 129 Fla. 398, 176 So. 510; State ex rel. Foster v. Anders, 135 Fla. 59, 184 So. 515; Thompson v. Harris, 148 Fla. 329, 4 So.2d 385.
It is not sufficient that a man and woman, although possessing the qualifications necessary to enter into a marriage contract, merely agree between themselves to become husband and wife at some future date. A contract to become husband and wife in future falls far short of establishing the existence of a common-law marriage, although carnal intercourse consequent thereupon is proven. In this jurisdiction we have never recognized the validity of a marriage per verba de futuro cum copula.
Moreover, we do not find in the transcript of testimony evidence of the existence of a contract per verba de praesenti to be man and wife. The testimony is no stronger than the allegations of the complaint. Indeed, it could not have been, absent an amendment of the complaint because of the fundamental rule that the allegata and probata must meet and correspond.
There has been a noticeable increase in cases of this character since the enactment of Chapter 771, F.S.A., which had the effect of abolishing actions for breach of contract to marry. Because of this fact, and for other good and sufficient reasons, we deem it advisable not only to decide this case by determining that respondent in her complaint and by her testimony failed to establish the primary prerequisite to a valid common-law marriage but also to outline for the benefit of the Bench and Bar the procedure which we conclude should be followed when a complaint alleging a common-law marriage and seeking alimony and attorneys' fees pendente lite is filed and its allegations denied by the defendant.
In the instant suit there was an application for the allowance of alimony and attorneys' fees pendente lite. The Chancellor held an ex parte hearing on July 17, 1951, at which time the respondent herein testified in support of her complaint that "The parties agreed they would enter into a marriage and consider themselves husband and wife." (Emphasis supplied) She further testified as to an agreement "that no civil ceremony would be had" (Emphasis supplied) and that subsequently the parties lived together as man and wife until sometime in 1951 at various times and places mentioned in the complaint. Following this hearing the Chancellor entered an order requiring the petitioner herein to pay unto the respondent the sum of $125 each week as temporary alimony plus the sum which to the date of the order had accumulated in the aggregate amount of $1440. The said order further awarded $2500 to respondent's attorneys at temporary attorneys' fees and the order likewise provided for the appointment of a receiver to take charge, custody and control of the capital stock of Fincher Motors, Inc., which was owned by the petitioner. At a later date a motion was made to set aside the order of July 17, 1951, and on July 27, 1951, the Chancellor entered an order wherein he recited that the court had heard "the testimony of the defendant and his witnesses" and the court had previously heard "the testimony of the plaintiff." In and by this order the learned Chancellor adjudged that the plaintiff (respondent herein) had proven a prima facie case of the existence of a valid marriage between the parties and that the defendant failed to rebut the prima facie existence of such marriage. In this order of July 27, 1951, the court again directed that Harry W. Fincher be required to pay unto his alleged wife (respondent herein) the sum of $125 each week as temporary alimony. In this same order the court again made an allowance of $2500 as temporary attorneys' fees, to be paid to the respondent's attorneys.
Thus it may be seen that the Chancellor applied the rule which we have often pronounced to the effect that a plaintiff wife in a divorce suit should at least make a prima facie showing of the existence of *803 the marriage relationship before being heard on her application for temporary alimony and attorneys' fees. This principle is predicated upon the fundamental premise that the existence of a valid marriage is the only basis for an order awarding alimony, suit money or counsel fees pendente lite. Wood v. Wood, 56 Fla. 882, 47 So. 560; Arendall v. Arendall, 61 Fla. 496, 54 So. 957; Chaves v. Chaves, supra. Although the Chancellor properly observed the above mentioned rule he erred in holding that the respondent herein made out a prima facie case of the existence of a valid common-law marriage.
We have concluded that the aforementioned rule should apply only in those cases wherein a ceremonial marriage has been alleged. In a case wherein a putative wife alleges the existence of a common-law marriage and the defendant denies the marriage as well as the allegations of facts which are made in support of her asseveration that a common-law marriage in fact exists, we are of the opinion that the rule should be even stronger than the one heretofore promulgated. The Chancellor should sever the issues and before hearing the plaintiff on her application for alimony and attorneys' fees pendente lite should determine conclusively whether a common-law marriage actually exists. In the alternative he should defer passing upon the application for alimony and attorneys' fees pendente lite until final hearing unless the exigencies of the particular case should in equity and good conscience dictate the severance of issues as outlined above and an immediate determination as to whether a valid common-law marriage exists.
We rest the judgment herein upon our original premise that respondent failed to allege or prove, even prima facie, a marriage contract per verba de praesenti. However, we expressly direct attention to the fact that we deem the rule stated herein to be entirely consonant with public policy and equitable principles with respect to the procedure to be followed and the burden to be carried by the plaintiff upon application for alimony, suit money and counsel fees pendente lite in a suit wherein a common-law marriage is relied upon as a predicate for the granting of such relief.
Nothing said herein shall be taken as abrogating or modifying the time honored rule that when a prima facie case has been established the burden of proof thereafter shifts to the defendant.
It is our conclusion that the petition for writ of certiorari should be granted and the challenged order quashed.
It is so ordered.
SEBRING, C.J., and CHAPMAN, ROBERTS, and MATHEWS, JJ., concur.
TERRELL and THOMAS, JJ., dissent.
THOMAS, Justice (dissenting).
Because I think prima facie case has been made.
TERRELL, J., concurs.