65 So.2d 732 (1953)
SINCLAIR REFINING CO.
v.
WATSON.
Supreme Court of Florida, en Banc.
April 17, 1953.
Rehearing Denied June 1, 1953.
Mitchell D. Price and Price & Price, Miami, for appellant.
Sibley & Davis, Miami Beach, for appellee.
ROBERTS, Chief Justice.
The question here is on the enforceability of a restrictive covenant in a deed, as follows:
"It is distinctly understood and agreed that the property herewith and hereby conveyed shall never be sold to any person or corporation to be used for private purposes, but that the same shall be used only for street, roadway, highway, or sidewalk purposes."
The property burdened by this restrictive covenant consisted of a parcel of land 50 feet by 53 feet, occupied the corner of a block, and was a part of a larger tract owned by one Packer. The deed of conveyance containing the restrictive covenant in question was executed by Packer on July 1, 1936. It appears that it was Packer's *733 intention at the time of the conveyance to construct a filling station on the unconveyed portion of the tract, which adjoined the subject property on the north, and he did so shortly thereafter. Packer operated the filling station until 1941, at which time he sold it and the parcel improved thereby to the Sinclair Refining Company, the appellant here (hereinafter referred to as "Sinclair"), and Sinclair is presently operating the filling station. The subject property was graded and filled and later paved by Packer, and also by Sinclair, and has been used for ingress and egress to and from the filling station since its construction. Packer, and later Sinclair, paid the taxes on the subject property through the year 1948. The 1949 taxes were paid by a successor in title to the original grantee, prior to the time that such taxes were delinquent.
On March 27, 1950, the subject property was conveyed by the original grantee to one Lamon by warranty deed, which deed contained the restrictive covenant appearing in the original deed, above noted. Lamon subsequently, on May 10, 1950, conveyed the property to the appellee by warranty deed and without incorporating the restrictive covenant in such deed. Shortly after this conveyance, the instant suit was instituted by the appellee against Sinclair and others, for a declaratory decree as to the validity and enforceability of the restrictive covenant, and other relief. Answer was filed by Sinclair; and, upon motion of the appellee, the lower court entered a decree on bill and answer, which decree was affirmed by this court on appeal. Sinclair Refining Company v. Watson, Fla., 55 So.2d 803. In accordance with the terms of such decree, the cause was thereafter referred to a Special Master for the purpose of taking testimony on the question of "whether or not there is any logical or reasonable basis or opportunity for the use of the corner lot in question as a public highway, or public street or public sidewalk." The Special Master found that the subject property was used by the public mainly for ingress and egress to and from the filling station owned by Sinclair, and that "there is no logical or reasonable basis or opportunity for the use of the property in question as a public highway or public street or public sidewalk." On the basis of such finding, the lower court entered a decree declaring the restrictive covenant to be void and unenforceable, and quieting title to the lot in the appellee. Sinclair has appealed from such decree.
At the outset, it should be noted that the restrictive covenant in question does not restrain the alienation but only the use of the subject property; and the question will, then, be decided under the principles of law respecting restrictive covenants as to use of property.
It should also be noted that no attack was made on the validity, ab initio, of the restrictive covenant; and, indeed, such an attack could not be sustained. While covenants restraining the free use of real property are not favored, it is also true that, under our system of free enterprise, the public policy of this state and this nation favors the fullest liberty of contract and the widest latitude possible in the disposition of one's property, so long as no disposition is sought to be made contrary to public policy or express law and so long as the restraint is within reasonable bounds. See Heisler v. Marceau, 95 Fla. 135, 116 So. 447. Certainly, a restrictive covenant limiting the use of a tract of land to street, highway or sidewalk purposes is not contrary to public policy, nor does it contravene any statutory or constitutional provisions of law.
The only question here, then, is whether there has been such a change of circumstances as would make it inequitable to enforce the restrictive covenant. And we think the circumstances here present negative the conclusion reached by the Special Master and the Chancellor.
As above noted, the covenant in question restricted the use of the property to "street, roadway, highway or sidewalk purposes." While, ordinarily, restrictive covenants are strictly construed, effect will be given to the manifest intention of the parties, when considered in connection with the circumstances surrounding the transaction. Moore v. Stevens, 90 Fla. 879, 106 So. 901, 43 A.L.R. 1127. As stated in Heisler *734 v. Marceau, supra [95 Fla. 135, 116 So. 448], "* * * the intention of the parties to the covenant, construed in the light of the surrounding circumstances, as expressed in the whole of the instrument containing the covenant, not the opinion of witnesses as to whether a different use of premises conveyed would be helpful or detrimental, is controlling." A street or highway, within the definition of Chapter 317, Florida Statutes, F.S.A., relating to regulation of traffic on the highways, is "The entire width between the boundary of every way or place of whatever nature when any part thereof is open to the use of the public for purposes of vehicular traffic." Section 317.01(22). (Emphasis is supplied.) Here, the subject property is "open to the use of the public for purposes of vehicular traffic." And we have no doubt that it was the intention of the parties to have the property kept forever open for pedestrian or vehicular traffic by the public, regardless of whether it was ever made a part of a street or highway laid out by the public authorities, and even though such use by the public is mainly for ingress and egress to and from Sinclair's filling station. No other construction of the covenant can be made, in view of the fact that Packer built his station and located his gasoline pumps in such manner as to require that this space be kept open for this purpose. It would have been the rankest folly for Packer to convey away the area so necessary to the operation of his filling station without making such provision, and we cannot believe that he intended to do otherwise.
When thus construed in accordance with the clear intention of the parties, it is clear that there has been no such change in circumstances as would make it inequitable to enforce the covenant. The filling station is still in operation; the covenant restricting the use of the subject property to the purposes therein named is still of substantial value to Sinclair, the owner of the dominant estate. It is the absence of substantial value to the dominant estate that creates an equity in favor of quieting the title of the servient estate; and so long as substantial value remains, no equity arises in favor of the servient owner. See 14 Am.Jur., Sec. 305, page 649.
Moreover, even if the covenant is construed as restricting the property to use only as a portion of an established street or thoroughfare (as the Chancellor evidently did), it is doubtful that the restrictive covenant should fall. While there was evidence that the public authorities have no immediate intention of widening the streets by which the subject property is bounded, this court can take judicial notice of the phenomenal growth in the population of this state  an increase of 46.1 percent, according to the 1950 United States Census over the 1940 population. Such trend of growth will continue to create additional demands for all public services and utilities, and particularly for increased street and highway facilities. While the property may not be immediately needed, we cannot go so far as to say that it will never be needed in the future for use as a part of an established street or thoroughfare; and it has substantial value for such purpose, whenever the public convenience shall so require.
For the reasons stated, it was error to decree that the restrictive covenant in question was void and unenforceable, and the decree should be and it is hereby
Reversed.
TERRELL, THOMAS, SEBRING, MATHEWS and DREW, JJ., concur.
HOBSON, J., concurring specially.
HOBSON, Justice (concurring specially).
This cause is before us for the second time. The first appeal, 55 So.2d 803, was from a final decree dated the 9th day of April, 1951, in which the Chancellor decided that the appellant has never had any right or interest in the property involved; that the said property was being used for private purposes contrary to the restriction contained in the deeds to said property; that in order to decide the question of the validity of the restriction set out in said deeds it would be necessary that testimony be *735 taken to ascertain whether or not there was any reasonable or sound basis or opportunity for use of the corner in question as a public highway, public street or public sidewalk. Upon appeal we affirmed that decree.
The Chancellor, pursuant to his ruling and in reliance upon our affirmance thereof, referred the cause to a special master in chancery with directions that he take testimony "to determine whether or not there is any logical or reasonable basis or opportunity for the use of the corner lot in question as a public highway, or public street or public sidewalk." After hearing all of the witnesses the master filed his report in which he made the finding that "There is no logical or reasonable basis or opportunity for use of the property in question as a public highway, or public street or public sidewalk."
Predicated upon this finding which was approved by the Chancellor, the latter rendered a supplemental final decree from which this appeal was taken and is being prosecuted.
It is the contention of counsel for appellee that every question now before us was determined contrary to appellant's contentions when the original final decree was affirmed by this Court. I cannot unreservedly agree with this contention but I do find that every question presented on this appeal, save one, was decided contra to appellant's contentions.
The only question upon this appeal which has not previously been adjudicated and which I consider as deserving of our consideration is whether there is in this record competent substantial evidence which sustains the finding of fact made by the special master and confirmed by the Chancellor.
As aforestated, the special master found from the testimony heard by him that there was no logical or reasonable basis or opportunity for the use of the property in question as a public highway, public street or public sidewalk. This finding was approved by the Chancellor but my examination of the transcript of testimony convinces me that there is no competent substantial evidence in this record to sustain the finding in effect that all of this property which may ever be needed for a public highway or public street or public sidewalk has already been utilized by the State of Florida. Indeed, I do not believe that it would be possible to prove that the day will never come when there would be no reasonable basis or opportunity for the use of the subject property as a public highway, public street or public sidewalk. For this reason, I am constrained to concur in the judgment of reversal.
However, the law of the case was settled on the original appeal. Indeed, except for the taking of testimony and the making of the finding of fact, this cause was concluded upon the going down of our mandate on the appeal from the final decree of April 9, 1951. If the Chancellor erred in entering the first final decree and we perpetrated his obliquity upon the prior appeal the opinion, in all fairness to the Chancellor, if for no other reason, should unequivocally so state. Of course, it is distasteful to "eat crow" but, for the sake of clarity of the law, the issue as to whether we and the Chancellor committed error initially should be squarely met and pointedly decided. However, I do not believe that the Chancellor committed error initially or that this Court erroneously determined the questions presented on the prior appeal.
On the former appearance of this case we approved the Chancellor's determination that he should give the parties litigant an opportunity to present testimony upon the question "whether or not there was any reasonable or sound basis or opportunity for use of the corner in question as a public highway, public street or public sidewalk." By necessary implication, we decided as a matter of law, and I think correctly so, that a restrictive covenant designed to bind the fee-simple grantee of real property forever to a single use thereof to which such property is not at the time conformable and to which it is not and never will become, reasonably adapted is a restraint contrary to and contradictory of the estate created by the grant and is void. It amounts to an unreasonable restraint upon the jus dispondendi of real property, is repugnant to the estate *736 created and runs counter to sound public policy. It follows that such a restrictive covenant is unenforceable. See Davis v. Geyer, 151 Fla. 362, 9 So.2d 727; Robinson v. Randolph, 21 Fla. 629, 58 Am.Rep. 692; Libby v. Winston, 207 Ala. 681, 93 So. 631.