## In re JOHNS' ESTATE.

County Judge's Court, Palm Beach County.

August 6, 1954.

Burns, Middleton & Rogers, West Palm Beach, Jack R. Kirchik and Gregory M. Pahules, both of Miami, for Maria Makrides.

Sidney J. Catts, Jr., West Palm Beach, for co-administrators.

Beck & Allen, Belle Glade, for Alex Tokales, et al.

Paty, Downey & Paty, West Palm Beach, for Kaliope Maniol. et al.

RICHARD P. ROBBINS, County Judge.

Paul Johns, a citizen and resident of Palm Beach County, died on October 2, 1953 leaving an estate valued at more than $125,000. There were numerous relatives consisting of cousins residing in the United States and in Greece, and because of the uncertainty as to their identity the co-administrators appointed by the court have filed a petition for the determination of the heirs at law and the beneficiaries of the estate. To this petition one Maria Johns, also known as Maria Makrides, has responded, and answering affirmatively has alleged that on December 25, 1952 she and the deceased, Paul Johns, entered into a common law marriage with each other by a verbal agreement or understanding, express or implied, in accordance with the laws of Florida, and that such relationship continued to exist until decedent's death. Answers have been filed by Nick Elangis, Kaliope Maniol, and other of the cousins, denying that Maria Makrides was the common law wife of Paul Johns or that she is now his widow. An answer was also filed by the guardian ad litem for the unknown heirs alleging that he has not yet been able to ascertain all of the next of kin.

On June 4, 1954 a stipulation was entered into between the co-administrators, the guardian ad litem, the cousins who have answered the petition and Maria Makrides agreeing that the issue raised by the answer of Maria Makrides to the petition of the co-administrators be tried before the court, and that the determination of other beneficiaries be held in abeyance pending a decision as to the rights of the alleged common law wife. Pursuant thereto the issue raised in the pleadings as to the validity of the alleged common law marriage came before the court for a decision. After hearing the testimony of the witnesses and oral argument, exhaustive briefs on the points of law involved were filed by counsel for the respective parties.

This case is very similar to In re Belin's Estate (Fla.), 194 So. 333, tried before this court in 1937. In the Belin case the decedent had been previously married and divorced and gave as his reason for not making his common law marriage public, as stated in his own language to one of the witnesses—"Because I am a Catholic, and if I get married again I will be excommunicated from the church, and for that reason I prefer to keep this quiet." In the case at bar the respondent Maria Makrides, being a member of the Greek Orthodox Church and because of the recent death of her husband was reluctant to violate the attitude, custom and habit of the Greek people of that church of middle or advanced age by remarrying soon after the death of her spouse. See vol. 1, page 106, transcript of testimony of Emanuel Makrides, son of Maria

Makrides. And her daughter, Barbara Meek, at page 168 testified as follows—"Q. Except for members of the family and a few close friends did your mother make the fact public that she was married to Paul Johns or, on the contrary, did she keep it a secret?   A. She did keep it a secret. The only people she told it, to my knowledge, was the children." In the Belin case, commenting on the evidence, the chancellor said in his final order—"She was usually known to the great majority of people with whom she maintained social or business relations, or contacts of any sort, as a single woman, just as he was known as a single man. Few testify to a different status." And his decision in that case, affirmed by the Supreme Court, was to the effect that a common law marriage did not exist between the parties. The situation in the case at bar is, for all considerations of the points of law involved, the same.

Where a common law marriage can be established by *direct evidence of the agreement to cohabit as man and wife* it seems to be well settled, Catlett v. Chestnut (Fla.), 146 So. 241, that subsequent acts of concealment or secrecy concerning the relationship of the parties will not destroy the marital status. But where direct evidence is unobtainable to prove a marriage per verba de praesenti as distinguished from a ceremonial marriage and the testimony of the surviving party is barred by statute (section 90.05, Florida Statutes 1953) as it is in this case, proof of general repute cannot be supported by hearsay testimony, it must be established by positive proof, as was said in LeBlanc v. Yawn (Fla.), 126 So. 789—"that it was generally understood among the neighbors and acquaintances with whom the parties associate in their daily life that they are living together as man and wife and that their relations are not meretricious." And where habitation and repute have to be relied upon to prove the marriage, it must be founded upon general reputation and cannot be sustained by a divided or singular opinion, Eldred v. Eldred (Va.), 34 S. E. 477. The Oklahoma Supreme Court has held that in the absence of children the evidence to establish such a relationship must be clear and convincing, moreover, the proof of the reputation of the relationship must be general and not special or divided, Richard v. Richard, 45 Pac. 2d 101.

It is pertinent to observe that the evidence fails to show issue of the alleged marriage and that it is a fair assumption that there was none. Since a contract to become husband and wife in the future will not establish the existence of a common law marriage, although carnal intercourse thereupon is proven, Fincher v. Fincher (Fla.), 55 So. 2d 800, 802, Marsicano v. Marsicano (Fla.), 84 So. 156, 158, the testimony that the parties intended at a later time to have a ceremonial marriage in the church not only fails to

support the contention that there was a marriage per verba de praesenti, but on the contrary indicates a mental reservation incompatible with present consent. In conclusion, although our Supreme Court has held in the LeBlanc case, page 331, that he who asserts the illegality of a marriage must assume the burden of proving his assertion, I am of the opinion that the evidence in this case taken as a whole fails to reveal a prima facie case of present assent or a marriage by repute, see In re Klinger's Estate (Fla.), 73 So. 2d 50. It is therefore ordered and adjudged that Maria Makrides is not the surviving spouse of Paul Johns, deceased, and is not entitled to participate in the distribution of the assets of his estate.