ROBERTS, Justice.
This is a controversy between the lessees, under a common lessor, of adjoining property. The plaintiff, appellee here, has since May 1950 operated a drive-in theatre on the premises leased by it. The defendants, appellants here, took possession of the adjoining property under an assignment of lease from one Watson and in 1953 established a used car lot thereon. The difficulty between the parties arose out of the effect on the operation of the theatre of the lights used by defendants in illuminating their lot and displaying their wares. It is not disputed that the lights blur the picture on the movie screen and are annoying to the patrons of the theatre; it is also conceded that the method of illumination adopted by defendants is the type of lighting customarily found in used car lots in the area.
Plaintiff filed suit against the defendants for a mandatory injunction to compel them to correct and eliminate the objectionable lighting, on two grounds: (1) that it constituted a private nuisance, and (2) that it violated the terms of the lease, and modification thereof, under which the defendants were in possession of the premises. The complaint also asked for damages. The cause was heard by a Special Master, and his findings of fact and conclusions of law were approved and affirmed in their entirety by the Chancellor. The Special Master found that the lighting did not constitute a private nuisance, but that it constituted a violation of the terms of the lease. He recommended that no damages be awarded to plaintiff. The final decree required the defendants to correct the objectionable lighting by one of the two procedures recommended by an expert witness, and this appeal by defendants followed. The only question here is whether the Special Master and Chancellor misinterpreted the applicable provisions of the lease.
The defendants’ leased premises were originally leased by the lessor to Watson and wife in January 1952 for use as a restaurant and cocktail bar. This lease provided in paragraph 3 thereof that the Wat-sons could not assign it or sub-let any portion of the leased premises “nor shall the same be used for any purpose or purposes which might be detrimental to or competitive with the interests of the lessors on property owned by them to the South and East of this leasehold [the drive-in theater property], without first having obtained the written consent' to such assignment or un-derletting, or to such change of purpose for the use of the premises, from the lessor * * * ” Also pertinent here is paragraph 24 of a Rider to the original lease, which provides as follows:
“24. Lessors agree that the Lessees shall have the right to sublet the premises or any part thereof, providing that no sign or lights shall be erected by either tenent or sub-tenant that would in any way obstruct the view of the Theater Display sign located on Lejeune Road, south of this leasehold, nor shall either tenant or sub-tenant make any use of the property described herein or any part thereof in a manner which would be objectionable to the drive-in theatre adjacent to this leasehold. Subletting does not in any way release the Lessees from their obligation as stated in this lease and sub-tenants, if any, shall be bound by the same conditions as stated herein.”
This lease was modified by an agreement dated November 29, 1952, looking toward the use of the premises as a used car lot, and the lease, as modified, was assigned by the Watsons to the defendants in December 1952. The pertinent portions of the modification agreement are as follows:
“1. That clause 3 and paragraph 24 of the rider, of the original lease, is amended to (sic) that the Lessees or their assigns may have the privilege of using said premises as a used car lot, and Lessees or their assigns shall have the right to pave such portions of the property as may be necessary or proper for use in the used car business, and to make such installations on the *240 premises as may be a necessary and proper part of the operation of the business of the sale of used cars excepting any restrictions or limitations contained in said lease or rider attached thereto.
# * Jjl
“4. The Lessors and Lessees agree that except as above herein expressly modified, that all of the remaining terms and conditions of the original lease and the rider attached thereto, shall remain in' full force and effect.
“5. Lessee shall not use demised premises for any purpose other than a used car lot, nor shall he sub-let or assign this lease, without first obtaining Lessor’s written consent to such change in use, or. sub-letting or assignment, which such consent shall be subject to all the provisions contained in paragraph 24 of the rider to the original lease.”
The Special Master construed these provisions.of the lease and modification agreement as follows:
“One, in trying to arrive at the intention of the parties, would naturally consider here that the .modification agreement expressly authorized the lessees or their assigns to use the premises for the purpose of operating thereon the business of the sale of used cars and as the Defendants contend; the lessors must have-been aware of the fact that that type of operation, at least in the Miami area, calls for the installation and use of a great number of lights. In that connection, the lessors specifically agreed that the lessees or assigns might make such installations on the premises as may be a necessary and proper part of such an operation. Undoubtedly, such installations included lights or lighting facilities such as are necessary and a proper part of the operation of such a business. But, the lessors further said and the lessees agreed, or vice versa: excepting any restrictions or limitations contained in said lease or rider thereto. The word ‘excepting’ caused the writer to pause to determine whether it meant ‘excluding,’, ‘notwithstanding,’ ‘in spite of,’ ‘subject to,’ .or ‘reserving.’ An examination- of- authorities forces the Master to the conclusion that the word ‘excepting’ in the instrument under consideration could not be interpreted as meaning ‘excluding,’ ‘notwithstanding’ or ‘in spite of,’ but must be interpreted as meaning ‘reserving’ or ‘subject to’ any restrictions or limitations contained in the lease or rider attached thereto. It seems that the words ‘excepting’ and ‘reserving’ are often used interchangeably and any technical meaning must be derived from intention of the parties. Generally, a ‘reservation’ in a deed is like an ‘exception,’ something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant, and the words ‘reserving’ and ‘excepting,’ although strictly distinguishable, may be used interchangeably or indiscriminately. See 15A Words and Phrases, Excepting, p. 79, et seq. and Pocket Part. In the case of Florida East Coast Ry. Co. v. Worley, 49 Fla. 297, 38 So. 618, 619, 623, the Supreme Court of Florida, speaking through Mr. Justice Carter, said:
“ ‘There is no arbitrary rule which requires that the technical meaning of these words shall be given them in every instance where used in grants, written dedications, and other documents. The two words (reserving and excepting) are frequently used interchangeably, and the technical meaning will be made to yield to the manifest intention. 13 Cyc. 674.’
“But if there remains any doubt as to the meaning of the word ‘excepting’, a close look at paragraph 5 of the modification seems to remove the possibility of such doubt. In this paragraph it is provided that.the lessees shall not use demis.ed premises for any purpose other than a used car lot, nor shall they sublet or assign the lease, without first obtaining lessor’s written consent to such change in use, or subletting or assignment, which such consent shall he subject to all the provisions contained in-paragraph 24 of the Rider to the original lease. Defendants hold the leasehold in question under an assignment and while the record is silent as to the written consent required, it must .be assumed that lessors *241 gave their written consent to such assignment, but that consent, under the terms of the Modification, could only be subject to all the provisions contained in paragraph 24 of the Rider to the original lease. And, it is in that paragraph 24 where we find the provision to the effect that neither lessees nor assigns shall make any use of the property described therein or any part thereof in a manner which would be objectionable to the drive-in theatre adjacent to the leasehold. Under the Modification Agreement, no consent to said assignment would have been given without subjecting the Defendants to ‘all the provisions contained in paragraph 24 of the Rider to the original lease.’ And, so it is that we must hold that the Defendants, although specifically authorized to use the premises in the operation of the business of the sale of used cars and also specifically authorized to pave certain portions thereof and to make such installations on the premises as may be a necessary and proper part of the operation of the business of the sale of used cars, in so doing may not use the property in a manner which would be objectionable to the drive-in theatre adjacent to the leasehold.”
We are in complete agreement with the interpretation made by the Master, and adopt his views as those of this court. That this was the clear intent of the parties is further shown by a letter directed to the defendants by the common lessor of the parties in March 19S3 in which he advised them, as follows:
“Before entering into any lease agreement with Mr. Watson we had a clear understanding with him regarding the fact that certain types of lighting could be highly detrimental to the theatre’s business therefore certain restrictive clauses were incorporated in the original lease agreement as well as in the modification of lease agreement. Mr. Watson assumed the responsibility of protecting these interests and you in taking over Mr. Watson’s lease assume the same responsibility.”
There can be no doubt that the lighting used by defendants was such a substantial interference with plaintiff’s the-atre business as to be “objectionable” within the meaning of the restrictive covenant of the lease. Cf. Theunissen v. Huyler’s Inc., 58 App.D.C. 106, 25 F.2d 530, 61 A.L.R. 706. Nor has it been made to appear that such a restraint is unreasonable. This court said in Sinclair Refining Co. v. Watson, Fla., 65 So.2d 732, 733, that
“While covenants restraining the free use of real property are not favored, it is also true that, under our system of free enterprise, the public policy of this state and this nation favors the fullest liberty of contract and the widest latitude possible in the disposition of one’s property, so long as no disposition is sought to be made contrary to public policy or express law and so long as the restraint is within reasonable bounds.”
Finding no error in the decree appealed from, it should be and it is hereby
Affirmed.
DREW, C. J., and TERRELL and O’CONNELL, JJ., concur.