HORTON, Judge.
The appellant was the defendant and the appellee the plaintiff in the trial court. Both are nationals of Chile. The appellee has been living in Dade County, Florida, since 1961, whereas the appellant has resided mainly in Chile.
During the year 1953, the appellant and -the appellee, who were married but not. to each other, allegedly fell in love and each obtained from their then respective spouses purported Mexican divorces. Shortly after the entry of these two alleged Mexican divorce decrees, the appellant and appellee were allegedly married by a proxy ceremony in Mexico, neither party being at that time within the jurisdictional limits of that country. They lived together from the date of the alleged marriage in 1954 until 1962, when the appellee brought a bill of complaint for alimony unconnected with causes of divorce in the circuit court of Dade County, Florida. The appellant’s answer *906 to the complaint for alimony admitted the performance of a marriage by proxy between the parties in 1954, but denied that such marriage was effective because the appellee had a living husband from whom she had not been divorced. The basis for this charge was that an authenticated certificate of the registrar of the Mexican court where the alleged divorce between the appellee and her former husband was granted indicated that there was no record of such a divorce decree or action between the appellee and her former husband in Mexico.
With this development, the wife obtained leave of the court and filed an amended bill of complaint, asking for divorce or annulment pursuant to § 65.04(9), Fla.Stat., F.S.A.,[1] in which she admitted that she had not been legally divorced from her former husband and that likewise, the appellant had not been legally divorced from his former wife, all as a result of a fraud practiced upon them by an alleged magistrate in Mexico'. She concluded that both parties to this litigation were “legally incapable of having entered into the marriage in Mexico on March 21, 1954.” Four children were born of this relationship; two of whom are residing within Dade County in the custody of the appellee. In addition to asking that the court declare the marriage null and void, either, by decree of annulment or divorce, the appellee asked that she be granted custody of all the children, payment of support and maintenance for said children, as well as alimony, costs, and counsel fees.
The appellant answered the amended complaint, setting up substantially the same allegations which he ha'd urged in his former answer to the complaint for alimony, i.e., that the marriage was void by reason of the incapacity of the appellee.
The court upon final hearing granted the appellee a divorce from the appellant, awarded her custody of the four children, court costs, $1,000 per month permanent alimony, $2,000 per month for the support of .the children, $35,000 counsel fees, certain personal property in Santiago, Chile, and furniture belonging to the parties in an apartment on Miami Beach, together with a lump sum judgment of $30,350. This relief was contained in an opinion and order of October 23, 1962, and a supplemental final decree of November 27, 1962.
It is from these two orders that the appellant appeals, urging some eight reasons why the orders should be reversed. The main point we feel it is necessary to discuss, and which as will be evident, is determinative of many of the issues raised, is the alleged error in granting a decree of divorce to the appellee. If the decree of divorce was correct, then other matters of which the appellant complains would involve the chancellor’s discretion or an alleged abuse of that discretion.
Any award of alimony, suit money and counsel fees, both temporary and permanent, is premised on a showing of the existence of a valid marriage.[2] If this showing is not made, then the court generally is without jurisdiction to consider any of the collateral problems that would normally arise out of a validly contracted marital relationship. Without appearing to labor the point, we conclude that the record here conclusively shows that no legal contract' of marriage was or could have been entered into by the two people to this litigation for the simple and obvious fact that they were incapable of making such a contract.[3] Admittedly they each have a living spouse from whom they have not been divorced.
*907 It is true that both parties appear to have been victims of a fraud practiced upon them by some unscrupulous individual in Mexico who was adept in the preparation, execution and sale for a price of what appeared to be valid divorce decrees. This, of course, may be extenuating circumstances tending toward the absolution of the moral consciences of the parties involved, but lends little support in establishing the jurisdiction of the court to award a divorce decree in the absence of a valid marriag-e. What the legal status might be of the four minor children born to this peculiar relationship is not before this court to decide. However, appellant’s duty toward the appellee has been defined and redefined many times by our courts, the ultimate conclusion being that he owes her no duty of support.
The appellee contends that she was an innocent party to this relationship but the record discloses that she was aware that something was amiss as far back as 1958 and had urged the appellant to seek some legal remedy in Chile to legitimatize her status. Certainly she was an innocent victim of the fraud practiced upon her by someone in Mexico in the issuance of the worthless decree, but her innocence in this regard cannot breathe validity into an otherwise invalid and illegal undertaking. We are not confronted here.with a wife who, without knowledge of her prospective husband’s capacity to contract a marriage, is led into the relationship unwittingly, but with two people who, in reliance upon worthless sheets of paper, attempted to contract the solemn obligation of marriage. Neither in our opinion is in a position to point a finger at the other.
Since, as we have heretofore stated, the bedrock upon which the courts of Florida are permitted to grant decrees of divorce is the finding of a valid marriage, it follows that when such finding is absent or admitted not to have existed, then the court is without jurisdiction to grant either of .them relief.[4]
The support of the children poseá another question. No matter how the children here may be stigmatized, the appellant father is not relieved from the obligation to support them. They have a special equity in the cause, not connected with nor dependent upon the validity or invalidity of the marriage. They are entitled to support from the appellant and the chancellor’s.decision in that regard is affirmed.[5]
Accordingly, the orders appealed awarding support to the minor children are affirmed. In all other respects, both orders are reversed, and the causéis remanded for the entry of a decree not inconsistent with the views herein expressed.
Affirmed in part, reversed in part and remanded. . .'

. § 65.04. “Grounds for divorce No divorce shall be granted unless one of the following facts shall appear:
* * if!‘ ' * *
“(9) That either party had a husband or wife living at the time of the marriage • sought to be annulled.”

. Fincher v. Fincher, Fla.1952, 55 So.2d 800, 803.

. Jones v. Jones, 119 Fla. 824, 161 So. 836, 839, 104 A.L.E. 1.

. Higgins v. Higgins, Ma.App.1962, 146 So.2d 122, 123; Sahler v. Sahler, 154 Fla. 206. 17 So.2d 105, 107-108.

. Todd v. Todd, 151 Fla. 134, 9 So.2d 279.