166 So.2d 433 (1964)
Lisolette BURGER, Petitioner,
v.
Jose BURGER, Respondent.
No. 33166.
Supreme Court of Florida.
July 13, 1964.
*434 Walters, Moore & Costanzo, Miami, and Harold Shapiro, Miami Beach, for petitioner.
Benjamin I. Shulman, Miami Beach, for respondent.
THORNAL, Justice.
By a petition for a writ of certiorari we are requested to review a decision of the District Court of Appeal, Third District, because of alleged conflicts with prior decisions of this Court. See Burger v. Burger, 156 So.2d 905.
The principal problem involves a consideration of the jurisdiction of a chancellor to dissolve a putative marriage between two people, each of whom was, at the time, married to another.
The petitioner wife initially filed a complaint seeking separate maintenance unconnected with divorce under Section 65.10, Florida Statutes, F.S.A. The respondent husband answered that the alleged marriage of the parties in Mexico in 1954 was invalid because the petitioner was then married to another. Petitioner then obtained leave to amend her complaint. By the amendment she sought a divorce or annulment of her "marriage" to respondent, alleging that at the time of their marriage in 1954, both had living spouses. She relied upon Section 65.04(9), Florida Statutes, F.S.A. The evidence developed that prior to March 23, 1954, the parties became enamored of each other, although each had a living spouse. In order to liberate themselves they obtained a Mexican mail-order divorce. This was followed by a Mexican proxy marriage on March 23, 1954. The parties in good faith assumed that they were free to marry each other, having disposed of their conjugal obligations to their former spouses through the convenient medium of the mail-order divorce. They lived together as husband and wife until the instant litigation arose in January 1962. Four children were born of the union. The record here reveals, and the chancellor found, that the Mexican mail-order divorces were totally invalid, although admittedly the parties were in good faith and believed them to be effective. The invalidity arose out of a fraud perpetrated upon them by a purported Mexican magistrate who, in fact, was totally without authority and who conducted a divorce racket at the expense of innocent victims.
The chancellor granted the divorce; placed the four children in the custody of the petitioner, their mother; awarded substantial sums for the support of the children, and also permanent alimony to the wife; directed the payment of the wife's attorney's fees, and ordered the division of certain jointly-owned property. On appeal, the District Court reversed. That court, in effect, held that the chancellor was without jurisdiction to grant a divorce in the absence of a valid marriage. It reversed all aspects of the final decree save the provision for the maintenance of the children by the father. We are now requested to review this decision.
We must determine at the outset whether this Court has jurisdiction. The *435 petitioner claims that the decision of the District Court collides with prior decisions of this Court in Young v. Young, Fla., 97 So.2d 470; Todd v. Todd, 151 Fla. 134, 9 So.2d 279, and Therry v. Therry, 117 Fla. 453, 158 So. 120. By its decision in the instant case the District Court held that the finding of a valid marriage is an essential prerequisite to the granting of a decree of divorce under Florida law. It concluded that when a valid marriage is shown to be lacking, a court is without jurisdiction to grant relief to either party conditioned as are the parties here. The Court further held that the existence of a valid marriage is an essential prerequisite to allowance of either temporary or permanent alimony, suit money and counsel fees. This is the rule where a party relies on a valid marriage as the foundation for the divorce. Fincher v. Fincher, Fla., 55 So.2d 800.
In Young v. Young, supra, we expressly held that even though the "marriage" is void ab initio it is proper for a court, proceeding under Section 65.04(9), Florida Statutes, F.S.A., to dissolve the apparent marital status. In Todd v. Todd, supra, we held that a wife seeking to annul a marriage under Section 65.04(9), Florida Statutes, F.S.A., would be entitled to temporary alimony and suit money. In Therry v. Therry, supra, a wife sued for divorce. The husband counter-claimed on the ground that the wife had a living spouse at the time of their marriage. Although the court denied permanent alimony it did require payment of temporary alimony and suit money. It should be noted that in Therry the wife was the offending party and the divorce was granted at the husband's request.
It seems clear, therefore, that the instant decision directly collides with the decisions in the cases which we have discussed. The conflict is on the same points of law and supports the jurisdiction of this Court. Art. V, Sec. 4(3), Florida Constitution, F.S.A.
Having established our jurisdiction we proceed to review the cause on the merits. The District Court appeared to have the view that inasmuch as both parties had been the victim of the Mexican fraud, and as a result had entered into the marriage relationship illegally, the circuit court was thereby deprived of jurisdiction to enter a decree formally adjudicating the invalidity of the marriage. Section 65.04, Florida Statutes, F.S.A., reads in part as follows:
"No divorce shall be granted unless one of the following facts shall appear:
* * * * * *
"(9) That either party had a husband or wife living at the time of the marriage sought to be annulled."
We have consistently held that although a "marriage" is accomplished under circumstances which make it a nullity, it is to the best interest of society that a judicial determination of the invalidity be obtained. Young v. Young, supra. The Florida Legislature has provided that the existence of a spouse at the time a person contracts a marriage with another, constitutes a ground for "divorce". The statute which we have quoted does provide that when "either party" had a living husband or wife at the time of the marriage, a ground for divorce exists. As used in this statute the word "either" may properly be employed to cover a situation where both parties had living spouses. The social policy applicable is the same. We have often announced that the state has a substantial interest in the stability of the domestic relationship. In a case where two people innocently contract marriage when they are both incapable of doing so, it is to the best interest of the community as well as the parties that all doubts regarding the legality of the marriage be determined. We are not here confronted with a situation where the parties knowingly undertake to create a bigamous marriage. As employed in the instant statute, the word "either" connotes "both". For example, in Harrington's Sons Co. v. United States *436 Express Co., 87 N.J.L. 154, 93 A. 697, it was held that the expression "either party" in a statute could properly be employed to mean one or both of the two. In Kibler v. Parker, 191 Ark. 475, 86 S.W.2d 925, 927, the word "either", as used in an agreement was construed in the sense of "both". We, therefore, construe Section 65.04(9), supra, as authorizing a "divorce" by judicial decree in a situation where both parties have innocently undertaken to complete a marriage contract, even though both were incapable of doing so at the time.
So far as the record here reveals, the legal incapacity continued at the time the decree was entered. There is no evidence that the incapacitating elements had terminated during the "marriage" of the parties, so as to give rise to the possibility of an ensuing common law marriage. Technically, of course, a divorce is a process for dissolving a marriage. Ordinarily, a putative marriage, void in its inception, is the subject of an annulment. However, the courts in states having statutes similar to Florida have held that there is no objection to the Legislature employing the divorce procedure as a mechanism for accomplishing the dissolution. 17 Am.Jur., Divorce and Separation, page 281, Section 38; Whitney v. Whitney, 192 Okla. 174, 134 P.2d 357. In common parlance a divorce is understood to mean an adjudication of the dissolution of a valid marriage for a cause arising after the marriage. However, as employed in Section 65.04(9), Florida Statutes, F.S.A., the word is used to designate an adjudication of the nullity of a supposed marriage. See The American College Dictionary, p. 355. "Annulment" would be a more nearly accurate description of the type of decree entered in the instant situation. However, since the Legislature has stipulated that a bigamous "marriage" is a ground for "divorce", we find no error in the use of the term by the chancellor in his decree here.
In a proceeding pursuant to Section 65.04(9), supra, the chancellor also has the power to resolve problems incident to the custody and maintenance of children born of the "marriage". Todd v. Todd, 151 Fla. 134, 9 So.2d 279; Whitfield v. Whitfield, Fla.App., 161 So.2d 256. Such children are innocent victims of the situation. They should not be deprived of the right to be supported merely because the parents have created the invalidating circumstances. The chancellor, therefore, ruled correctly in awarding a sum for the maintenance of the children. He also had the jurisdiction to dispose of the matter of custody as he did.
We have held that even in situations where the putative wife was responsible for the invalidity of the union, she would still be entitled to temporary alimony and suit money to enable her to defend herself or otherwise participate in the litigation. Section 65.07, Florida Statutes, F.S.A. Therry v. Therry, 117 Fla. 453, 158 So. 120; Courtney v. Courtney, 108 Fla. 276, 146 So. 229. However, permanent alimony and fees in addition to those allowed pendente lite have been denied to a wife found guilty of a so-called "Ground Nine" basis for the "divorce." Therry v. Therry, supra. In Florida, alimony is a matter of equitable cognizance which rests in the sound discretion of the chancellor in the light of the facts of a particular case. Gill v. Gill, 107 Fla. 588, 145 So. 758; Prine v. Prine, 36 Fla. 676, 18 So. 781, 34 L.R.A. 87. In view of this rule, when the putative wife is the wrongdoer, or as here, when she is equally responsible with the putative husband in creating the situation, she is not entitled to permanent alimony or attorneys' fees other than those allowed pendente lite. When a wife is an innocent victim of the husband's wrong, then the court may allow permanent alimony and attorneys' fees on equitable principles as well as under Section 65.08, Florida Statutes, F.S.A. Young v. Young, supra.
Our holdings here regarding alimony and suit money are exceptions to the general rule that ordinarily to support these allowances, *437 it is necessary to prove the existence of a valid marriage. However, the exceptions we have announced are supportable on equitable principles as well as by a literal application of the Florida Statutes in view of the fact that the Legislature has recognized as a ground for "divorce" the very element which invalidates the marriage at its inception.
The sum of our holdings is as follows:
(1) The circuit court had jurisdiction over the parties and the subject matter and therefore, under Section 65.04(9), he had the power to grant the "divorce". In holding to the contrary the District Court was in error.
(2) The circuit court had the power to dispose of matters relating to the custody and maintenance of the children. In affirming him in this regard the District Court ruled correctly.
(3) The chancellor was in error in granting permanent alimony and anything other than pendente lite fees to the wife's attorneys for services to her. The fee awarded the attorneys will have to be re-examined by the chancellor, taking into consideration this opinion, and their entitlement to a fee for services in recovering support money for the children.
(4) In a proceeding of this kind the chancellor can also dispose of the rights of parties in property jointly owned. Inasmuch as there was no valid marriage, no estate by the entirety could be created. If there was jointly-owned property the parties should be considered as tenants in common.
We have not overlooked the decision of the District Court of Appeal, Third District, in Higgins v. Higgins, 146 So.2d 122. However, we must note in passing that that decision was not submitted to us for review.
The decision of the District Court is quashed and the cause is remanded to that court for further disposition consistent with this opinion.
It is so ordered.
DREW, C.J., and O'CONNELL and CALDWELL, JJ., concur.
ERVIN, J., dissents in part and concurs in part.
ERVIN, Justice (dissenting in part and concurring in part).
I would award permanent alimony to the wife. In all other respects I concur in this decision.