LaROSE, Judge.
 

 Madeleine Deegan appeals the trial court’s order finding her former husband, Antonio Taylor, in contempt for nonpayment of alimony and legal expenses. We reverse the trial court’s order to the extent that it denied Ms. Deegan’s motion for attorney’s fees. We affirm on the remaining issues without further discussion.
 

 Ms. Deegan and Mr. Taylor married in 1993. In 1999, they divorced pursuant to a Canadian court decree. Among other things, the decree awarded permanent periodic alimony to Ms. Deegan. The parties resolved a subsequent enforcement action in 2004 through a settlement agreement. The agreement provided that the prevailing party in any future enforcement action would recover attorney’s fees. A Canadian court adopted the 2004 settlement agreement as a support decree. A Florida court domesticated that decree in 2005.
 

 The parties learned later that Ms. Deegan’s divorce from a previous spouse was not final when she married Mr. Taylor. In 2006, the Canadian court granted Mr. Taylor an annulment. But, because of the six-year putative marriage, the Canadian court declared that the parties “shall benefit from the effect of the judgment of divorce and all accessory measures ... rendered by the [Canadian] Court.”
 
 [1]
 

 Upon Ms. Deegan’s petition, the trial court, in May 2008, domesticated the 2006 decree, finding that the Canadian court had jurisdiction and that the decree did not offend Florida’s public policy.
 
 See Nahar v. Nahar,
 
 656 So.2d 225, 229 (Fla. 3d DCA 1995) (“[A]ny foreign decree should be recognized as a valid judgment, and thus be entitled to comity, where the parties have been given notice and the opportunity to be heard, where the foreign court had original jurisdiction and where the foreign decree does not offend the public policy of the State of Florida.”);
 
 cf. Johnson v. Lincoln Square Props., Inc.,
 
 571 So.2d 541, 543 (Fla. 2d DCA 1990) (holding wife could bring consortium claim based on out-of-state common-law marriage even though Florida no longer allowed common-law marriage).
 

 In September 2008, Ms. Deegan moved for contempt and enforcement of Mr. Taylor’s obligations for alimony and legal expenses. Within a couple of months, the trial court found Mr. Taylor in contempt, set a purge amount, and entered a money judgment in Ms. Deegan’s favor for the arrears. The trial court, however, denied Ms. Deegan’s request for prevailing
 
 *229
 
 party attorney’s fees, reasoning that the 2004 settlement agreement on which Ms. Deegan relied was “based on the premise of a valid marriage when it has subsequently been determined that such was not the case.” This was error. By the terms of the domesticated 2006 Canadian decree, the 2004 settlement agreement, including the prevailing party attorney’s fees provision, is an order on accessory measures rendered by the Canadian court; by its terms, it survives the annulment.
 

 Burger v. Burger,
 
 166 So.2d 433 (Fla. 1964), cited in the trial court’s order, is inapplicable.
 
 Burger
 
 was an original divorce action in which the parties married assuming in good faith that their Mexican mail-order divorces from previous spouses were valid.
 
 Id.
 
 at 434. When the wife later sought a divorce, the trial court found the Mexican divorces invalid and granted divorce, alimony, attorney’s fees, and other relief.
 
 Id.
 
 On appeal, the Third District held that the trial court lacked jurisdiction to grant divorce in the absence of a valid marriage.
 
 Id.
 
 The supreme court reversed, holding that section 65.04(9), Florida Statutes (1962), authorized a “divorce” by judicial decree “in a situation where both parties have innocently undertaken to complete a marriage contract, even though both were incapable of doing so at the time.”
 
 Id.
 
 at 436. The supreme court held, however, that the trial court erred in awarding the wife permanent alimony and attorney’s fees where the wife was equally responsible in creating a bigamous marriage; the trial court could allow permanent alimony and attorney’s fees on equitable principles and under section 65.08, Florida Statutes (1962), only “[w'jhen a wife is an innocent victim of the husband’s wrong.”
 
 Id.
 

 The request for fees does not require us to explore the equitable principles apparently at play in
 
 Burger.
 
 Rather, the real issue is the deference owed to the Canadian decree. In handling Ms. Deegaris motion for contempt and enforcement, the trial court was called upon to enforce a domesticated Canadian decree that specifically retained all accessory measures, despite the grant of annulment. Accordingly, Ms. Deegan is entitled to prevailing party attorney’s fees as an accessory measure that survived the annulment of her marriage to Mr. Taylor. We reverse the order on appeal to the extent it denied fees; we affirm the order in all other respects.
 

 Reversed in part, affirmed in part, and remanded.
 

 WALLACE and CRENSHAW, JJ., Concur.
 

 [1]
 

 . "Accessory measures” or "corollary relief" refers to measures in a judgment granting divorce, separation or dissolution of a civil union that settle various matters that do not pertain to the basic issue of divorce, such as support, custody, and visiting rights. Gou-vernement du Québec, Ministére de la Justice, "Joint Application for Divorce on Draft Agreement,” http://www.justice.gouv.qcx a/englisb/ publications/generale/dem-conj-a.htm (last visited Jan. 25, 2010);
 
 see
 
 Divorce Act, R.S.C., ch. 3, § 15 (2d Supp. 1985) (respecting "Corollary Relief" provisions for child support, spousal support, and custody); Carol Rogerson,
 
 The Canadian Law of Spousal Support,
 
 38 Fam. L.Q. 69, 74 n. 12 (2004).