RUTH BOWDEN GILL, *Appellant*, vs. RICHARD SPENCER GILL, *Appellee*.

145 So. 758.

Opinion filed January 9, 1933.

Petition for rehearing denied February 7, 1933.

*E. M. Baynes* and *E. A. Lake,* for Appellant;

*O. E. Falls,* for Appellee.

TERRELL, J.—Appellee as complainant below brought suit against Appellant for divorce. Appellant as complainant then countered with a suit against Appellee for alimony. The two causes were consolidated on stipulation of the parties and on final hearing Appellee's prayer for divorce was granted and appellant's prayer for alimony was denied. This appeal is from that final decree.

The suit for divorce was predicated on extreme cruelty and frequent indulgence in a violent and ungovernable temper. The evidence on this point is in hopeless conflict but the finding of the chancellor is amply supported by the record and will not be disturbed. We are of the view however, that his finding on the question of alimony was erroneous.

In its original inception, alimony was the means by which the spiritual courts enforced the husband's common law duty to support his wife. In its current use it signifies nourishment or sustenance and has reference to that allowance which the husband may be required to pay his wife for her maintenance when living separate from him by reason of divorce or for other causes. It differs from dower in that it continues only to the death of the husband, at which time the wife comes into possession of the latter to provide for her after his decease. R. C. L. 864 and 867.

Alimony will not ordinarily be granted after a valid decree of divorce has been entered but it may be granted pendente lite, or in connection with divorce or unconnected with divorce, or unconnected with cause for divorce. Section 3194 et seq. Revised General Statute of 1920 (Section 4986 et seq. Compiled General Laws of 1927). The settled rule in most states is to the effect that the juris-

diction of equity courts to award alimony is not merely incidental to suits for divorce or separation but is inherent, and that alimony may be awarded in an independent suit therefor. The law of this state makes no exception to that rule except that it commands that no alimony shall be granted to an adulterous wife. Section 3195 and 3196 Revised General Statutes, supra.

Under Section 3197 Revised General Statutes of 1920 (Section 4989 Compiled General Laws of 1927) the right to apply for alimony without any reference whatever to divorce is granted the wife. She may in this case be living with the husband, or apart from him through his fault. The application at bar is clearly within this statute, the record disclosing that the parties lived together continuously till the wife went to Atlanta to be treated by a bone specialist, that the husband furnished her the means to make this trip, corresponded with her for a while, but before her return, he made up his mind to separate from her and refused to live with her on her return and continued to do so.

In Phinney vs. Phinney, 77 Fla. 850, 82 So. 357, this court held that our statute did not warrant permanent alimony to the former wife in a suit for divorce by the husband when she was wholly at fault. This rule is approved in other states when there are no mitigating circumstances and the husband has committed no breach of marital duty but it does not apply when the husband has not been entirely free from blame, or when the husband and wife have acquired property jointly, or when the wife has contributed personally to the husband's estate, either from her industry or from her own property. Erdmans vs. Erdmans, 90 Fla. 858, 107 So. 188; Carlton vs. Carlton, 78 Fla. 252, 83 So. 87; Raborn vs. Raborn, 81 Fla. 51, 87 So. 50; Baker vs. Baker, 94 Fla. 1001, 114 So. 661.

In the case at bar, the husband was not wholly free from

fault. A careful reading of the record leaves one of impartial mind with the feeling that incompatibility existed between the parties, that such incompatibility was intensified by meddling on the part of relatives and maybe others, that recoiling from the sting of such meddling and for other causes, the wife browbeat, tonguelashed, insinuated and goaded the husband with charges of unfaithfulness and incontinence that baffle one's credulity and no doubt made the marital relation intolerable. In addition to this she at times victimized her husband by resorting to physical violence and thereby made herself a nuisance as a wife. The husband, though at time acquiescent, was often a contributing factor to these domestic cyclones. There were instances in which he retaliated in kind, he condoned the conduct of his wife in ways not necessary to relate and at the time he made up his mind to sever the marital relation, she was under treatment by a bone specialist in Atlanta for injuries to her hand that he had inflicted and it may be that these injuries are permanent, though that remains to be seen.

At the time of the marriage of the parties hereto the wife was a trained nurse and a graduate musician. She was without means of support except as made in this way. It is contended on behalf of the husband that such acts of violence as he committed on his wife were committed in his self defense, but be that as it may it was not necessary that his self defense be exercised in a manner to maim his wife and for a while at least, seriously impair her ability to earn a living. It being shown that in one of their encounters, he broke one of the bones in the little finger of her left hand and wrenched the wrist so severely that the bones in it were dislocated and the hand still not flexible.

Under the common law, absolute divorce precluded the granting of alimony as the duty of support no longer

existed, neither had the wife a right of action against the husband to recover for her support. In some jurisdictions the matter of granting alimony is regulated entirely by statute while in some it is held that aside from statute, the better reasoned rule is that it is matter inherently of equitable cognizance and may be awarded at the discretion of the Chancellor according to the facts of the particular case. We approve that rule in this state.

It would be manifestly inequitable to hold the husband not liable for the payment of alimony under the facts in this case. No question of property rights is involved but he has materially impaired his wife's capacity to make a living and should therefore be required to contribute to her support. It follows that that part of the final decree refusing the award of alimony is reversed with directions to the chancellor to inquire as to the facilities of the parties and make such award of alimony as the circumstances of the parties will warrant. The circumstances of the parties having reference to the needs of the wife, the ability of the husband to provide for her and their station in life.

Affirmed in part, reversed in part.

WHITFIELD, J., concurs.

BUFORD, C.J. AND BROWN AND DAVIS, J.J., concur specially.

ELLIS, J., absent on account of sickness.

DAVIS, J. (Concurring specially).—I concur in the conclusion reached by my associate, MR. JUSTICE TERRELL, in this particular case, but with reservations. I consider a case like this the *single* exception that can be made to what was held in Phinney v. Phinney, 77 Fla. 850, 82 Sou. Rep. 357, where this Court said:

"Under the statutes of this state, permanent alimony cannot be awarded to the former wife in a suit by the husband where the divorce is granted for the fault of the wife."

The statutes of this state in providing for divorce have vested courts of equity with jurisdiction to administer the relief authorized. To a certain extent it may therefore be said that the granting of a divorce, even where a clear cause for divorce has been made out in the allegations and proof, rests upon those general equitable considerations which control courts of chancery in every proceeding of which they may be given statutory jurisdiction.

One principle of equity is that: ''He who seeks equity must do equity.'' Since divorce is a matter of equitable cognizance in Florida, there is not any reason why this equitable maxim should not apply to divorce cases, as well as other equitable proceedings, when circumstances require the maxim to be enforced.

In this case it clearly appeared that the wife had given her husband just cause for divorce on the ground of habitual indulgence in violent and ungovernable temper. The parties were without children and I do not think it should be said without qualification that, where a woman decides to make herself a female ''dreadnaught'' in the marital domicile and elsewhere, and thereby forfeits her rights to remain in the status of a wife, that the victimized ''mere man'' in the matrimonial compact can either equitably or legally, be compelled to continue to support a wife separated from him not for any fault of his, but because of her own inherent meanness and vicious propensity for marital aggressions that have brought about her predicament.

To hold otherwise would necessarily impose upon any man who dared to enter the matrimonial compact an obligation of uxoriousness for which I can find no legal warrant suggested by either reason or authority.

The evidence in this case shows, however, that notwithstanding all the cause for divorce of which the wife in this case had become guilty, that the husband had during the

period of the wife's coverture, unjustifiably inflicted on his wife certain substantial *permanent* personal injuries for which she could have sued him and recovered damages, but for the rule of law that prohibits a wife from recovering from her husband for a tort of that kind committed by him on her person during coverture. So long as the marital status remains intact, the wife is not without remedy for such a wrong, because she continues to be entitled to her husband's support. And the fact that the husband has, by an act of violence, so injured her as to cripple her for life, merely adds to the husband's expense on her account, because the husband has to bear the additional burden created by reason of his own wrong, so long as the marital status continues.

But the unconditional dissolution of the marriage on complaint of the husband, operates under the Phinney case, *supra,* to relieve the husband of any further duty to contribute to his wife's support. It would therefore deprive the permanently injured wife of the only compensation she could have under the law for the wrong done her by her husband's violence to her person *intra matrimonii vinculis.*

This circumstance of permanent personal injuries unjustifiably caused by the husband, in my judgment brings into consideration an independent equity in the wife's favor, which the Court, in the adjudication of the husband's claim for a divorce from her, may require the husband to satisfy *as a condition precedent* to his being granted the equitable relief of divorce to which he may be entitled so far as his right to be relieved of the matrimonial association is concerned.

In other words, the exception here made to the rule of Phinney v. Phinney, *supra,* may be stated to be, that where during coverture the husband has unjustifiably inflicted on his wife *permanent* and substantial personal injuries, which

would be redressible as a tort but for coverture, that a court of equity, vested with jurisdiction to grant the relief of divorce to the husband for causes occasioned by the wife's conduct toward him, may, and in proper cases of real necessity should, require the husband to do equity toward the permanently injured wife, by paying to her the *equivalent* of an allowance of alimony for her support, *as a condition precedent* to the husband's being granted the divorce he prays for, and is otherwise entitled to receive.

But the foregoing is as far as I think any exception to the rule of Phinney v. Phinney, *supra*, can be acknowledged or extended. I find myself wholly unable to agree that a court of equity can award a guilty wife an allowance as permanent alimony on any other consideration except that just stated, where the suit is by the husband and the divorce is granted for the wife's fault.

To hold more than this would subject an innocent husband to be offered up in the name of equitable principles, as a living sacrifice to the folly of having been inveigled into a connubial misalliance with an unconscionable virage, fair of form, perhaps, but who, like the foolish woman referred to by Solomon in his Proverbs "buildeth not her house, but plucketh it down with her hands."

The every day phrases "gold diggers" and "alimony chiselers," as applied to shrewish wives, who provoke their husbands by their intemperate or violent conduct to seek relief in a court of divorce, while such wives remain personally free from provable adultery, should not be given any new significance in this jurisdiction by over-ruling Phinney v. Phinney, directly or indirectly. Yet it cannot be denied that the plainest principles of justice demand that a permanently injured wife, so injured without adequate excuse, should not be cast adrift by a Court of equity without salvage for her wrongs, merely because her unbridled tongue, or an habitual quirk of temper, has made

it impossible for her husband to continue to live with her.

Therefore, with the foregoing modification and reservation herein stated, I concur in the opinion and conclusions stated by MR. JUSTICE TERRELL, which, because of the sweeping, general language used by him, may be interpreted as practically over-ruling Phinney v. Phinney, supra, which impression, I am sure, is by no means intended to be conveyed.

BUFORD, C.J. AND BROWN, J., concur.