KENNETH T. McCARTER v. DOROTHY AMBLER McCARTER.

179 So. 760.
Division B.
Opinion Filed February 28, 1938.
Rehearing Denied March 30, 1938.

*M. B. Hilton* and *B. M. Skelton,* for Appellant;

*L. P. Hardee* and *Raney H. Martin,* for Appellee.

CHAPMAN, J.—This is an appeal from a final decree of the Circuit Court of Pinellas County, Florida, dated May 19th, 1937, granting Dorothy Ambler McCarter a divorce from her husband, Kenneth T. McCarter, and alimony of $10.00 per week until $520.00 previously decreed and unpaid was fully paid off and discharged, and in addition temporary weekly alimony in the sum of $15.00 per week allowed under an order dated January 28th, 1937; also the sum of $250.00 as solicitor's fees and other items not material to a decision of the cause. The lower court denied the defendant below a supersedeas order and bond. The record shows that Dorothy Ambler McCarter, on January 7, 1937, filed a bill for maintenance and on January 20, 1937, Kenneth T. McCarter filed a bill of complaint seeking a divorce on the ground of desertion. On March 1, 1937, Dorothy Ambler McCarter filed an answer denying the material allegations of the bill of complaint and simultaneously a cross bill seeking a divorce on the ground of desertion and extreme cruelty.

The lower court entered an order consolidating the suit for maintenance filed on the part of the wife with the bill of complaint filed by the husband praying for a divorce on the ground of desertion and her cross bill seeking a divorce on the grounds of desertion and extreme cruelty. The lower court heard the evidence and entered the decree, *supra,* and the same is assigned as error and a review thereof is sought in this Court. The question squarely presented by the record is: Is the evidence sufficient to sustain the finding of fact as expressed in the final decree and assigned as error in this Court? The evidence shows the parties are origi-

nally from the State of Massachusetts and the husband made his home in St. Petersburg, Florida. The husband, with his mother, lived in Pinellas County when the wife prior to marriage went to Florida to spend the winter and obtained a room and boarded with the mother of her husband some four or five months and returned to her home in Massachusetts.

On August 27, 1935, the parties were married in the State of Massachusetts. The evidence shows that for some reason or other the wife did not care to announce the wedding immediately after marriage, but some few days elapsed before it became known. The father of the wife on one occasion became alarmed on account of the "daughter and wife" remaining out late one night and went to the husband and so advised him, and about 4:00 or 4:30 A. M. she came in under the influence of whiskey and escorted by a young man. The husband immediately went to her room and found she had not changed her clothes worn at the party and was "drunk" and could not talk intelligently. The husband, with full knowledge of these facts, with his wife left for Florida, their intended home, where husband and wife and mother of the husband were to live together. The wife was not required to do any work, but led an easy life, not leaving her bed before 9:00 or 10:00 of the morning, and the heaviest work on her part was to occasionally dry the dishes, which she did voluntarily. She was treated as a member of the family. The husband, at his wife's request, built a garage apartment and furnished the same elaborately. Shortly prior to its completion the wife feigned the receipt of a telegram to the effect that her mother was in serious condition in a hospital and her presence was required in Massachusetts. Her husband provided transportation for her and on December 13, 1935, she left to be at the bedside of her mother. On December 23, 1935, she wrote him from

West Palm Beach to the effect that she and mother were there and would be for at least two weeks, and gave her address. She went to the home of the husband on January 17, 1936, talked with her husband and mother-in-law, obtained her wearing apparel, pictures, and other personal items and asked for some money and when told she could have the money provided she remained in his home and discharged her duties as a wife, she immediately left his home and thereafter the legal proceedings above recited developed.

The record shows that the wife is a healthy woman, 28 years of age, with some training as a beautician and had been supported by her father and mother. She was charged in the Phymouth County, Massachusetts, Court on July 5, 1936, with intoxication. Her husband, prior to marriage, paid some of her expenses while she attended the Beauty Culture School. There is nothing in the record showing that she could not support herself had she only gone to work. She left the home of the husband about the time the garage apartment was ready to be occupied and declined to live in it with her husband.

The husband, while she lived with him, furnished her a home, food, clothing, and otherwise provided for her according to his station in life. The husband, on December 13, 1935, asked his wife to let him see the telegram requesting her presence with her mother in Massachusetts, but she declined to produce it. He supplied her request for transportation and accompanied her to the station. He suggested that a wire be sent prior to her departure and learn developments, but this wife refused to do. She left his home to go to Massachusetts on December 13, 1935, some three and one-half months after marriage and did so contrary to her husband's will or desire. We fail to find in the evidence a dereliction of duty on the part of this husband to his wife.

He was a good provider, kind and affectionate, and she deliberately left his home. He gave her no just cause to desert him.

The evidence fails to show bad health as testified by the wife as the cause of her leaving. It seems that some physician would have been called, a nurse employed to care for her, or some medical supplies obtained in connection with her illness and in this manner corroborates her statement as to bad health. The Chancellor should have granted plaintiff a divorce as against the wife on the ground of desertion, willful, obstinate and continuous, for a period of one year from December 13, 1936, to the date of filing the bill of complaint.

We have examined the sufficiency of the evidence to sustain the finding of the Chancellor on the allowance of alimony. The wife deserted the home where she was tenderly cared for and without a just cause. The husband is shown to own a small house from which he receives $30.00 per month, and no other source of income is shown. The ability of the husband to pay is not shown. Phelan v. Phelan, 12 Fla. 449; Floyd v. Floyd, 91 Fla. 910, 108 So. 896. The law does not require a husband to pay a wife alimony on facts as disclosed by this record. She lived with her husband three and one-half months, no children were borne, had good health, was partially prepared as a beautician to make a living, and was young and energetic. If this decree is permitted to stand, substantial justice is not awarded in this suit. This wife can obtain employment and make an honest living rather than force weekly payments in the form of alimony from a man whom she has willfully and intentionally deserted. See Palmer v. Palmer, 36 Fla. 385, 18 So. 720; Beekman v. Beekman, 53 Fla. 858, 43 So. 923.

The decree appealed from is reversed with directions that

a decree of divorce be entered in behalf of Kenneth T. Mc-Carter, and the bill of complaint seeking separate maintenance and the cross bill seeking a divorce be dismissed.

It is so ordered.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.

### ON PETITION FOR REHEARING.

BUFORD, J.—On again considering the record in the light of the petition for rehearing, I am convinced that the decree appealed from should have been affirmed because there is disclosed by the record ample substantial evidence to support that decree.

Therefore, I cannot agree that petition for rehearing should be denied.