192 So.2d 514 (1966)
Harold R. GORDON, Appellant,
v.
Ramona Nanette GORDON, Appellee.
No. H-369.
District Court of Appeal of Florida. First District.
December 6, 1966.
*515 Alfred C. Scott, Jacksonville, for appellant.
Lewis, Paul & Bennett, Jacksonville, for appellee.
RAWLS, Chief Judge.
The sole question on this appeal is whether the chancellor erred in this divorce action in awarding plaintiff wife permanent alimony.
The plaintiff wife brought an action for alimony unconnected with divorce and was granted temporary alimony. The defendant husband answered and counterclaimed for divorce. Plaintiff then amended her complaint seeking a divorce and permanent alimony. She was awarded the divorce and permanent alimony in the sum of $75.00 every two weeks. The defendant-appellant is an enlisted man in the Navy and is able to pay this amount although he is also supporting his children by a prior marriage.
*516 Until February, 1965, Mrs. Ramona Nanette Gordon, a 31 year old divorcee with 3 children, was a supervisor in a Dobbs House Restaurant in San Antonio, Texas. On February 7th she took a 6 months' leave of absence and came to Florida with $300.00 and 3 children. On this amount, plus $90 per month child support she was receiving from her ex-husband, she and the children lived in Tampa for 2 months before moving in with her sister at Mayport where she stayed for one month. Her intention was to stay in Florida for 6 months and then return to her job in Texas.
On May 9, 1965, she married Harold R. Gordon. The undisputed facts are that three days later she told him that she did not care what he did or what she did, but he had married her and was going to support her for the rest of his life. She testified that after 3 weeks of marriage he changed, became a different person, began drinking and was cold to her and her children. He told her he did not love her and wondered why he had married her. On August 19, 1965, after 3 months of marriage including two separations of one week duration each, the parties made their final break. For 3 weeks prior to that time, they had lived in the same house but not as husband and wife.
During the 3 months of marriage she did not work, and her previous husband failed to make the monthly child support payments. At the time of the hearing in January, 1966, she was still not receiving any child support and was unemployed due to a kidney infection. It is interesting to note that although Mrs. Gordon and her sister testified that she was in poor health, she offered no doctor's testimony to that effect and she did not amend her faculties schedule to include any amount for expenditures for doctors and medicines.
By Section 65.08, Florida Statutes, F.S.A., the chancellor is authorized to make such allowance for alimony "as from the circumstances of the parties and the nature of the case may be fit, equitable and just." The factors to be considered in awarding permanent alimony include the value of the parties' estates, the parties' earning ability, age, health, station in life, duration of marriage, the conduct of the parties, prior marriages, and relative responsibilities as to other dependents who have claims on the husband for sustenance or education. Of these the short duration of the marriage,[1] previous marriages,[2] the youthfulness of the wife,[3] prior business experience of the wife and even ability to develop a skill to earn her own living[4] are factors which often militate against the award of alimony. The existence of several of these factors in one case is sometimes a sufficient basis for a complete denial of alimony.[5]
Here the wife was 31, the husband 35. Both had been previously married and both had children. There were no children born of this union and none were expected. Neither had any physical disability. Both were capable of earning a living; in fact, the wife had worked for the preceding 12 *517 years with only time off to have her 3 children. There was no evidence that either party had acquired an estate of any value. The wife did not lose her chastity; she did not lose alimony from her first husband since she had not been receiving any; moreover, she positively testified that she lost nothing by this marriage except child support and that was due to her violating an order of the Texas court by keeping her children out of the state for more than 6 months. The uncontradicted evidence was that it was the wife who entered the first sour note in this marriage by announcing on the second or third day after the wedding that she did not care what she did or what appellant did, but since he had married her, he was going to support her the rest of his life.
Under these facts it is our considered opinion that the chancellor abused his discretion in awarding this wife permanent alimony for an unlimited length of time. This conclusion is based upon the relative equities of the parties of a marriage of such short duration and upon the fact that the wife failed to prove her need other than possibly a temporary need due to present illness which has not been shown to have any connection with this marriage.
It has long been settled that an award of alimony, whether pendente lite or permanent, is discretionary with the chancellor, but no alimony may be awarded without a positive showing of two things: (1) the necessity on the part of the wife, and (2) the pecuniary ability of the husband to supply that necessity.[6] It is this first element that is lacking in this case.
As early as 1864 it was established by Chaires v. Chaires[7] that there was no need for alimony if the wife has a separate estate adequate for her comfortable support. In referring to that case Mr. Justice Roberts speaking for our Supreme Court stated:[8]
"Ordinarily, however, in those days the husband was the `only hope of support' of an `unfortunate wife, who may have been abandoned by a dissolute husband and doomed to drag out a weary existence in married widowhood. * * *' Chaires v. Chaires, supra. And, indeed, until recent years, a divorced wife had little prospect of being able to work and earn a livelihood, and it was essential to a well-ordered society that she be appropriately maintained by her estranged husband so that she would not become a charge on the community. Times have now changed. The broad, practically unlimited opportunities for women in the business world of today are a matter of common knowledge. Thus, in an era where the opportunities for self-support by the wife are so abundant, the fact that the marriage has been brought to an end because of the fault of the husband does not necessarily entitle the wife to be forever supported by a former husband who has little, if any, more economic advantages than she has. We do not construe the marriage status, once achieved, as conferring on the former wife of a shipwrecked marriage the right to live a life of veritable ease with no effort and little incentive on her part to apply such talent as she may possess to making her own way."
McCarter v. McCarter, supra, is analogous. There a 28 year old healthy wife left her husband after 3 1/2 months of marriage. The wife was awarded a divorce and alimony of $10 per week for one year. The Supreme Court in reversing that small award of alimony said:
"The law does not require a husband to pay a wife alimony on facts as disclosed by this record. She lived with her husband three and one-half months, no children *518 were born, had good health, was partially prepared as a beautician to make a living, and was young and energetic. If this decree is permitted to stand, substantial justice is not awarded in this suit. This wife can obtain employment and make an honest living rather than force weekly payments in the form of alimony from a man whom she has willfully and intentionally deserted."
The distinguishing factor between the case sub judice and McCarter, was that in McCarter the Supreme Court held that the husband, instead of the wife, was entitled to the divorce. This distinction was obliterated in Kahn, supra, wherein it was held that the mere fact that the husband was at fault did not necessarily entitle the wife to support.
Possibly this appellee was entitled to alimony for a length of time necessary for her to readjust to her changed conditions. However, it is noted that she has been receiving alimony since August, 1965  a period of more than one year.
The cause is remanded to the chancellor for reconsideration of the propriety of the award of alimony in accordance with the views expressed herein.
JOHNSON, J., concurs.
SACK, J., dissents.
SACK, Judge (dissenting).
Respectfully, however, I cannot agree with the majority. The award of alimony was a matter peculiarly within the sound discretion of the Chancellor who heard the evidence, and I find no gross abuse of this discretion. Indeed, the majority opinion notes that the appellee was entitled to alimony for a length of time necessary for her to readjust to her changed conditions. On such a concession I do not feel that it is the function of this court to become involved in the details of amount or time. Upon a showing of changed conditions the appellant has a clear remedy by petition to the trial court.
NOTES
[1] Hyman v. Hyman, 149 Fla. 558, 6 So.2d 535 (Fla. 1942); Ray v. Ray, 44 So.2d 286 (Fla. 1950); Golembeski v. Golembeski, 57 So.2d 654 (Fla. 1952); Schuberth v. Schuberth, 52 So.2d 332 (Fla. 1951); and Pross v. Pross, 72 So.2d 671 (Fla. 1954). See also Ploscowe, The Truth About Divorce, (1955), p. 193: "The length of the marriage is an important element which courts take into account in awarding alimony. Obviously the longer a women has lived with a man and performed the functions which one normally expects from a wife, the greater is her claim on him. To hold otherwise is to put the gold-digger, who marries a man for his money and then divorces him as fast as she can get rid of him, on a par with a woman who has spent most of her adult years looking after a husband."
[2] Golembeski v. Golembeski, ibid.; Schuberth v. Schuberth, ibid.; and Pross v. Pross, ibid.
[3] Kahn v. Kahn, 78 So.2d 367 (Fla. 1955).
[4] McCarter v. McCarter, 131 Fla. 561, 179 So. 760 (Fla. 1938).
[5] Hyman v. Hyman, Ray v. Ray, and Kahn v. Kahn, supra.
[6] Jacobs v. Jacobs, 50 So.2d 169 (Fla. 1951).
[7] Chaires v. Chaires, 10 Fla. 308 (1864).
[8] Kahn v. Kahn, 78 So.2d 367, 368 (Fla. 1955).