ERVIN, Judge,
dissenting.
I dissent. Gertrude Krieger filed petition for separate maintenance against Richard Krieger, appellee, alleging that he willfully abandoned her in August, 1972 and refused to support and maintain her ever since. She further alleged that she was without funds, income or property with which to support and maintain herself. The husband filed his answer and counter-petition for dissolution of marriage, alleging constructive desertion by the wife for her refusal to return with him to the United States and her continued residence in West Germany; thereby forfeiting her right to alimony. The wife filed her answer to the counter-petition, including a prayer for permanent alimony. Following hearing, the court entered final judgment of dissolution of marriage and denied the wife’s petition for alimony. The wife appeals the denial of her application for alimony.
At the hearing held on April 1,1976, only the husband and his son were present to testify. The record before this court is based upon the deposition testimony of the wife and a stipulation to the testimony given by the husband and son at the hearing. The wife’s deposition shows that she was born in Germany in 1925, but later became an American citizen, completed ten years of education, was employed prior to the marriage, but had not worked during the 22 years preceding the separation; instead attended to her duties as a homemaker and raised their two children to adulthood. She testified that since the separation she had worked temporarily at several jobs but was presently unemployed. Although she often sought employment she was told she was too old and, due to her lack of experience, was advised by prospective employers she was not qualified. Moreover, her physical health was poor due to a nervous condition which had existed the preceding three years.
She stated that the reason she did not accompany her husband to the United States was that he did not provide her with transportation and that he did not wish her to accompany him there. Moreover, due to her belief that since the separation her husband had taken up residence with another woman, she felt she had no place to go. She testified that she received $263.85 unemployment or welfare benefits from the German government per month and that her financial needs were in excess of $396.00 per month. In a financial affidavit, Mrs. Krieger stated that she had total liabilities consisting of loans in the sum of $3,023.30.
In the stipulation of testimony taken at the final hearing, the husband stated that his reason for leaving Germany was to seek employment in the United States due to his forced retirement from his position as an *1348 equipment specialist civil employee with the United States Army in 1972 because of a reduction in the military which caused his job eliminated. Prior to his retirement his gross income in 1972 and 1973 was $17,-500.00. He did not seriously expect his wife to accompany him because they had experienced marital difficulties since 1966 and had discussed separation many times.
The court’s final judgment of dissolution, relating to the denial of alimony, stated only “[t]he wife’s petition for alimony is hereby denied and neither party shall receive alimony from the other.” The court gave no reasons for its denial of the wife’s petition; consequently we may only conclude that it determined that the wife was not entitled to alimony because of her misconduct in failing to accompany her husband on his return to the United States; thereby accepting the husband’s argument that she was guilty of constructive desertion. Great weight of course must be accorded the judgments of the trial court, and alimony awards will not be disturbed unless an abuse of discretion is shown. Sommese v. Sommese, 324 So.2d 647 (Fla. 1st DCA 1976). In Sisson v. Sisson, 336 So.2d 1129 (Fla.1976), the Florida Supreme Court recently held that appellant is required to show clearly that the trial court abused its discretion in the amount of the award of alimony. The question necessarily, under the particular circumstances of this case, is: Did the trial court abuse its discretion in denying the wife’s petition for alimony?
I.
It cannot seriously be argued that the wife did not establish her entitlement to alimony based upon her need and the ability of the husband to pay. In Sisson v. Sisson, supra, the Supreme Court stated that whether or not alimony is characterized as permanent or rehabilitative, the principle issues to be determined are the need of the spouse seeking alimony and the ability of the other spouse to pay. In discussing the effect of the “No-Fault Divorce Act” upon the right of the spouse to obtain alimony, the Fourth District Court of Appeal in Lefler v. Lefler, 264 So.2d 112 (Fla. 4th DCA 1972), stated:
“We have the view, however, that no matter which direction the flow of alimony may take, its basic nature and purpose remains the same as heretofore, i. e., to provide nourishment, sustenance and the necessities of life to a former spouse who has neither the resources nor ability to be self-sustaining. We expressly hold that just as heretofore the wife’s entitlement to alimony depended upon a showing of her need and the husband’s ability to pay, Jacobs v. Jacobs, Fla.1951, 50 So.2d 169; Pendleton v. Pendleton, Fla.App.1966, 189 So.2d 499; 10 Fla.Jur., Divorce, § 166, so now the husband’s entitlement to alimony depends upon a showing of his need and the wife’s ability to pay.” 264 So.2d 113-114. (Emphasis supplied.)
The cases are replete with situations similar to those in the case before us where the wife was held to be entitled to alimony when it was shown that (1) the wife faithfully attended to her marital duties for many years; (2) she was later unemployable due to her physical condition or lack of outside employment experience and (3) the husband was capable of providing support for the wife. E. g., Lash v. Lash, 307 So.2d 241 (Fla. 2nd DCA 1975); Norton v. Norton, 328 So.2d 484 (Fla. 1st DCA 1976); Nevins v. Nevins, 305 So.2d 63 (Fla. 3rd DCA 1974); Gall v. Gall, 336 So.2d 10 (Fla. 2nd DCA 1976); Fugassi v. Fugassi, 332 So.2d 695 (Fla. 4th DCA 1976); Calligarich v. Calligarich, 256 So.2d 60 (Fla. 4th DCA 1971); Sharpe v. Sharpe, 267 So.2d 665 (Fla. 3rd DCA 1972); Palmer v. Palmer, 338 So.2d 86 (Fla. 1st DCA 1976).
Additional factors to be considered in awarding alimony include, as stated by the Fourth District Court of Appeal in Gordon v. Gordon, 335 So.2d 321, 322 (Fla. 4th DCA 1976):
“. . . due consideration must be given ‘the value of the parties’ estates, the parties’ earning ability, age, health, station in life, duration of marriage, conduct *1349 of the parties, prior marriages, and relative responsibilities as to other dependents who have claims on the husband for sustenance or education.’ See Gordon v. Gordon, 192 So.2d 514 (Fla.App. 1st 1966). See also McBee v. McRee, 267 So.2d 21 (Fla.App. 4th 1972).”
When we consider the above factors as applied to facts before us, we find that the wife was 51 years of age at the time of the final judgment of dissolution, her health was poor, the prospects of her future earning ability were bleak due both to her deteriorated physical condition and to the fact that she had no employment experience for 22 years prior to the separation. When we examine the financial ability of Mr. Krieger to provide for the needs of his former wife, we find a man who has no separate estate of his own; who, at the time of the final hearing, was temporarily unemployed, but was nevertheless in good health and who received a monthly civil service annuity of $841.00. Moreover he claimed no persons on his income tax return dependent upon him for support. We may fairly conclude that Mr. Krieger, while far from a man of affluence, nevertheless was capable of providing some degree of sustenance to his wife’s dire financial plight. The wife’s situation here was very much like that described by the Second District Court of Appeal in Lash v. Lash, supra:
“. . .in those cases where the dissolution comes about after many years of marriage, there are different circumstances to be considered. [From those in which dissolution occurs after a short period of time.] In the first place, it often happens that the wife has given up her career upon marriage in order to manage the home and raise children. Furthermore, in a marriage where the wife has stayed home, the husband has had the opportunity of enhancing his working expertise during the entire period of his married life; whereas, the wife, if anything, may now be less equipped for work than she was when she became married.” 307 So.2d at 243.
II.
The wife has made a prima facie showing of her entitlement to alimony. The only remaining question, then, is whether she forfeited her rights thereto by her failure to return to the United States with her husband? She argues that her misconduct, if any, does not constitute a bar since the only misconduct mentioned under Section 61.08(1), Florida Statutes (1975),[1] which gives the chancellor discretion to enter an outright denial of a request for alimony, is adultery and since the record contains no proof that she was an adulterous wife, she has clearly established her entitlement to the award, having shown her need and the ability of the husband to pay. The argument continues that having made such showing, the chancellor is vested only with the discretion, under Section 61.08(2),[2] to determine the amount of the award.
In Oliver v. Oliver, 285 So.2d 638 (Fla. 4th DCA 1973), the court, when confronted with the issue of the spouse’s entitlement to alimony when he or she was also guilty of misconduct, stated:
“As all know, there is a wide range of discretion vested in the court in deciding how much and the kind of alimony to award and there are many factors, such as the misconduct of a party, that may properly be placed before the court touching upon the issue and which form the basis for the proper exercise of such dis *1350 cretion. See 10A Fla.Jur., Dissolution of Marriage, Separation, and Annulment, § 52 et seq. Alimony is not determined by some iron clad formula that can be applied with sharp certainty. The equities, circumstances and the whole marital picture furnish and form the fabric from which the award is to be cut, and if the court limits itself solely to the economics of the matter, it deprives itself of valuable factors that may aid in doing justice to the problem.
The predecessor statute, Section 61.08, F.S.1969, F.S.A., is not materially different from the current statute, 61.08(2), supra, as both provide for alimony based upon a consideration of equity and justice.
We feel that because of the mentioned similarity between the two statutes, the case law that construed the earlier alimony statute concerning the misconduct of the parties is equally applicable to the 1971 statute. Thus, the marital conduct and misconduct of the parties is a factor to be considered in determining alimony. Hobbs v. Hobbs, Fla.App.1962, 136 So.2d 363. See also 9 A.L.R.2d 1026 and 34 A.L.R.2d 313; Fla.Family Law, § 22.39 (2d ed. 1972).” 285 So.2d at 640-641. (Emphasis supplied.)
Thus for a proper resolution to the question before us it is necessary to examine those cases which construed the predecessor statutes of Section 61.08.
In Phinney v. Phinney, 77 Fla. 850, 82 So. 357 (1919), the court held, in construing the effect of Section 1932, General Statutes, 1906, Compiled Laws 1914,[3] that permanent alimony could not be awarded to the former wife in a suit brought by the husband where the divorce was granted for the fault of the wife. This opinion was modified by the court’s later decision in Gill v. Gill, 107 Fla. 588, 145 So. 758 (1933). In Gill, the husband was awarded a divorce from his wife on the grounds of the wife’s extreme cruelty and violent and ungovernable temper. The court limited its prior holding in Phinney v. Phinney, supra, barring alimony to the wife to situations Where the wife was wholly at fault. The rule, however, the court continued, does not apply when the husband has not been entirely free from blame, or when the wife has contributed personally to the husband’s estate, either from her industry or from her property. Since the husband was not free from fault, the court reversed that portion of the final decree refusing alimony to the wife.
A year later in Mathews v. Mathews, 117 Fla. 60, 157 So. 195 (1934), while the chancellor granted a divorce to the husband on the ground of the wife’s desertion, nevertheless he awarded permanent alimony to the wife. In Mathews, there were no facts showing any degree of fault on behalf of the husband and the court held in a split decision that the award of alimony was justified “by an equitable consideration of the whole record . . . . ” 157 So. at 196. The dissenting opinion of Davis, Chief Justice, quoted the following words from the chancellor’s decree: “ ‘. . . a faithful wife of 40 years is entitled consideration even though at the end she should desert the husband and the burden of contribution might be a heavy one for the husband, . . ."’ Id. 157 So. at 196. While not expressly so stating, I assume the majority opinion tacitly approved the reasoning supporting the chancellor’s conclusion.
In Randolph v. Randolph, 146 Fla. 491, 1 So.2d 480 (1941), the husband filed a bill for divorce against his wife on the grounds of extreme cruelty and violent and ungovernable temper. The wife counterclaimed charging her husband with the same offenses. At the final hearing the court found that both parties proved their case and entered a decree divorcing each from the other. Replying to the husband’s con *1351 tention that the alimony statute and Phinney v. Phinney, supra, barred the offending spouse from alimony if she was the actuating cause of the divorce, the court responded:
“We do not so interpret the statute and the last cited case when read in the light of the statute does not warrant that interpretation. The only class barred absolutely from alimony is the adulterous wife. In all other cases, the Chancellor may award such amounts for alimony as in the ‘circumstances of the parties and nature of the case may be fit, equitable and just.’ Aside from adultery, the circumstances and conduct of an offending spouse might be such as to bar her from alimony but this is a matter solely in the discretion of the Chancellor governed by equity and justice and the condition of both parties. All these factors the Chancellor should consider and adjudicate the claim for alimony accordingly.” 1 So.2d at 481. (Emphasis supplied.)
There evolved from Randolph an ad hoc determination, based upon the particular circumstances of each case, whether a non-adulterous wife, guilty of some misconduct, should be awarded alimony.
The court’s opinion in Randolph was expressly followed shortly afterward in Cowan v. Cowan, 147 Fla. 473, 2 So.2d 869 (1941), where it was held that the trial court had discretion in all cases but that of adultery of the wife to grant alimony to the wife. In a concurring opinion by Chief Justice Brown, it was stated that the effect of the court’s opinion was to overrule its prior holding in Phinney v. Phinney, supra.
In Borden v. Borden, 156 Fla. 770, 23 So.2d 529 (1945), a decree of divorce was granted to the wife on the ground of habitual intemperance of the husband. Despite her needs and the husband’s ability to pay, she was denied alimony by the trial court for the apparent reason that she had attempted to perpetrate a fraud on her husband by inserting her name along with his as grantee in a bill of sale to a boat. On appeal, the court stated that the only penalty for the wife’s wrongdoing recognized by the statute, Section 65.08, Florida Statutes (1941), was adultery and reversed the court’s failure to award alimony to the wife.
Brunner v. Brunner, 159 Fla. 762, 32 So.2d 736 (1947) is the first case reversing a denial of alimony to the wife when the husband obtained a divorce based solely upon the fault of the wife. The court’s reversal of the denial of alimony was founded purely upon equitable circumstances. Answering the husband’s argument that the husband had placed with his wife for safekeeping several thousand dollars which was not returned to him, and that she had dissipated her husband’s money at race tracks, and was therefore not entitled to alimony, the court said:
“We do not understand that these contentions, or either of them, are exceptions to the provisions of Section 65.08, supra, which makes it the duty of a husband to pay his wife alimony or otherwise provide for her support and maintenance. It was error on the part of the court below in the final decree not to make provision for the support and maintenance of the wife. The husband is shown to be financially able to pay and the wife’s necessity is clearly apparent.” 32 So.2d at 737. (Emphasis added.)
Cases affirming judgments of dissolution which disallowed an award of alimony to the wife turn on such circumstances as the wife being youthful, in good health, capable of employment, and the marriage terminating after a short period of time. E. g., McCarter v. McCarter, 131 Fla. 561, 179 So. 760 (1938); Golembeski v. Golembeski, 57 So.2d 654 (Fla.1952); Howell v. Howell, 109 So.2d 882 (Fla.1959). Since Phinney, the common thread running throughout all the Florida Supreme Court cases on the subject is the overriding concern by the court of the relative positions of the parties: the needs of the wife and the financial ability of the husband to pay.
The No-Fault Divorce Act must be given a liberal construction by the courts. Section 61.001 states in part:
*1352 “1. This chapter shall be liberally construed and applied to promote its purposes.
2. Its purposes are:
* * * * * *
c. To mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage.” (Emphasis added.)
Section 61.08(2) permits the court to consider “any factor necessary to do equity and justice” in determining the amount of alimony to be awarded. While the chancellor may properly consider the misconduct of the spouse seeking alimony, it should not be the only factor motivating his determination. He may not, consistent with a sound exercise of judicial discretion, close his eyes to the needs of the supplicant spouse.
True, the wife may have been guilty of misconduct by her refusal to accompany her husband to America, but a fair conclusion to be drawn from this record is that the husband was not himself free from fault. Both parties admitted that a strain had weakened the marital foundation for six years preceding the husband’s departure. The husband so testified and even stated that he did not really believe Mrs. Krieger would join him on his return to the United States. Prior to his leave-taking, he and Mrs. Krieger had discussed separation on many occasions. One may easily conclude that the marriage had deteriorated to such a condition that by the time of the separation, the marital bonds had been de facto irretrievably broken.
I am convinced this record amply establishes the entitlement of the wife to permanent alimony and that the chancellor abused his discretion in denying her any consideration of assistance. It is conceivable that the former wife may eventually become employable. As this court observed in Norton v. Norton, supra, “permanent” does not mean “forever”. If Mr. Krieger can later establish that his former wife’s condition has changed to the point where she is capable of securing employment, he may of course make application pursuant to Section 61.14 to the trial court for modification of the alimony award.
I would reverse that portion of the final judgment of dissolution denying alimony to the wife.

. Which provides:
“In a proceeding for dissolution of marriage, the court may grant alimony to either party, which alimony may be rehabilitative or permanent in nature. In any award of alimony, the court may order periodic payments or payments in lump sum or both. The court may consider the adultery of a spouse and the circumstances thereof in determining whether alimony shall be awarded to such spouse and the amount of alimony, if any, to be awarded to such spouse.”

. Which provides:
“In determining a proper award of alimony, the court may consider any factor necessary to do equity and justice between the parties.”

. Providing:
“In every decree of divorce in a suit by the wife, the court shall make such orders touching the maintenance, alimony and suit money of the wife, or any allowance to be made to her, and if any, the security to be given for the same, as from the circumstances of the parties and nature of the case may be fit, equitable and just; but no alimony shall be granted to an adulterous wife.”